**UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION**

| | |
|---|---|
| Dyfan, LLC, | Civil Action No.: 6:19-cv-179 |
|              Plaintiff | |
|   v. | |
| Target Corporation, | |
|              Defendant. | **Jury Trial Demanded** |

**PLAINTIFF'S OPENING MARKMAN BRIEF**

# Table of Contents

I.   INTRODUCTION ........................................................................................................ 1

II.  OVERVIEW OF THE PATENTS-IN-SUIT ........................................................... 1

III. OVERVIEW OF CLAIM CONSTRUCTION PRINCIPLES ................................. 2

   A.   Plain And Ordinary Meaning Should Govern Absent A Narrow and Exacting Exception
        2

   B.   Construction of Means-Plus-Function Claims ................................................. 4

V.   TERMS 6–30 ARE NOT MEANS-PLUS-FUNCTION ELEMENTS, AND SHOULD BE
     GIVEN THEIR PLAIN AND ORDINARY MEANING ............................................. 12

VI.  CONCLUSION ........................................................................................................ 16

# Table of Authorities

## Cases

*3M Innovative Props. Co. v. Tredegar Corp.*, 725 F.3d 1315 (Fed. Cir. 2013) ............................ 3

*Apple Inc. v. Motorola, Inc.*, 757 F.3d 1286(Fed. Cir. 2014) ...................................................... 14

*Azure Networks, LLC v. CSR PLC*, 771 F.3d 1336 (Fed. Cir. 2014)........................................ 3, 5

*Cf. Phoenix Licensing, L.L.C. v. AAA Life Ins. Co.*, 2015 WL 1813456 (E.D. Tex. Apr. 20, 2015)

.................................................................................................................................................. 8

*Comark Commc'ns Inc. v. Harris Corp.*, 156 F.3d 1182 (Fed. Cir. 1998).................................... 4

*Constant v. Advanced Micro-Devices, Inc.*, 848 F.2d 1560 (Fed. Cir. 1988)................................ 4

*GE Lighting Sols., LLC v. AgiLight, Inc.* 750 F.3d 1304 (Fed. Cir. 2014) .................................... 3

*Howmedica Osteonics Corp. v. Wright Medical Tech., Inc.*, 540 F.3d 1337 (Fed. Cir. 2008). 9, 10

*Linear Tech. Corp. v. Impala Linear Corp.*, 379 F.3d 1311 (Fed. Cir. 2004)............................. 14

*Linear Technology Corp. v. International Trade Com'n*, 566 F.3d 1049 (Fed. Cir. 2009)...... 9, 10

*Markman v. Westview Instruments, Inc.*, 52 F.3d 967 (Fed. Cir. 1995) (en banc), aff'd, 517 U.S.

370 (1996)................................................................................................................................. 2

*Masco Corp. v. United States*, 303 F.3d 1316  (Fed. Cir. 2002) .................................................... 4

*Oatey Co. v. IPS Corp.*, 514 F.3d 1271 (Fed. Cir. 1271(collecting cases).................................... 7

*Phillips v. AWH Corp.*, 415 F.3d 1303 (Fed. Cir. 2005) ...................................................... passim

*Power Integrations, Inc. v. Fairchild Semiconductor Intern., Inc.*, 711 F.3d 1348 (Fed. Cir. 2013)

................................................................................................................................................ 14

*See Liebel-Flarsheim Co. v. Medrad, Inc.*, 358 F.3d 898 (Fed. Cir. 2004) ................................... 7

*SuperSpeed, LLC v. Google, Inc.*, Civil Action No. H-12-1688, 2014 WL 129225 (S.D. Tex. Jan.

14, 2014) ................................................................................................................................ 13

*Thorner v. Sony Computer Ent't Am.*, 669 F.3d 1362 (Fed. Cir. 2012)...........................................3

*Watts v. XL Sys., Inc.*, 232 F.3d 877 (Fed. Cir. 2000) ...................................................................4

*Williamson v. Citrix Online, LLC*, 972 F.3d 1339 (Fed. Cir. 2015) .........................................4, 13

*Zeroclick LLC v. Apple, Inc.*, 891 F.3d 1003 (Fed. Cir. 2018) ...............................................13, 14

**Statutes**
35 U.S.C. § 112...................................................................................................................... passim

**Other Authorities**
MANUAL OF PATENT EXAMINING PROCEDURE § 2181 (2017)..................................4, 15

## I.      INTRODUCTION

In this case, Plaintiff Dyfan, LLC ("Dyfan") asserts that Defendant Target Corp. ("Target") infringes two duly and legally issued United States Patents: U.S. Patent No. 9,973,899 ("the '899 Patent") and U.S. Patent No. 10,194,292 ("the '292 Patent") (collectively "Patents-in-Suit").  Dyfan submits the following brief in support of its proposed claim constructions.  During the meet and confer process preceding the filing of this brief, Dyfan proposed that no terms needed to be construed and all terms be given their plain and ordinary meaning.  Target, on the other hand initially proposed that over forty terms needed to be construed.  Thirty of Target's proposed terms remain part of the claim construction briefing process and are addressed in this brief.  For five of the thirty terms, Target proposes flawed constructions.  Target does so, as best as Dyfan can tell, to try and to conjure non-infringement positions where none exist.  For the remaining twenty-five terms, Target misguidedly insists the terms are means-plus-function claim elements governed by 35 U.S.C. § 112, ¶ 6 and that no structure for the elements is provided in the specification of the Patents-in-Suit.  Contrary to Target's assertions, however, no term needs to be construed by the Court and none of the claim elements are means-plus-function elements.

## II.     OVERVIEW OF THE PATENTS-IN-SUIT

The Patents-in-Suit[1] describe techniques for providing a location-based trigger for a mobile device.  *See* '899 Patent, 4:11–12.  For example, the mobile device can belong to a user located in a specific venue, such as a retail store.  *Id.* at 4:43–44.  While in the retail store, different broadcast short-range communication units (BSRCUs) broadcast messages that are

---

[1] The '899 Patent and '292 Patent are related as parent and continuation, and therefore share a common specification.  For convenience, only citations to the '899 Patent's specification are provided in this section.

detectable by the mobile device. *Id.* at 1:22–31.  Broadcast message from a BSRCU are detectable by mobile devices that are in proximity (e.g., communication range) of that BSRCU, and the broadcast messages from a BSRCU can indicate the location of that BSRCU.  *Id.* at 1:22–50.

A mobile device that receives a messages broadcast from a BSRCU can send a message to a server associated with the venue (e.g., retail store).  *See* '899 Patent, 2:8–11 and 38:20–23. The message from the mobile device to the server can indicate the location of the BSRCU.  *Id*. at 2:8–11.  In response to receiving the message from mobile device, the server can send location-relevant information to the mobile device, which can be displayed on a display device of the mobile device.  *Id.* at 2:21–40 and 5:23–25.  Thus, as a user travels around a venue, different location relevant information can be provided to the user based on where the user is within the venue, as determined by which BSRCU(s) the user's mobile device is receiving broadcast messages from.

## III.   OVERVIEW OF CLAIM CONSTRUCTION PRINCIPLES

### A.  Plain And Ordinary Meaning Should Govern Absent A Narrow and Exacting Exception

As the Court is aware, determining the proper meaning of patent claims is a question of law that exclusively belongs to the Court.  *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 970–71 (Fed. Cir. 1995) (en banc), aff'd, 517 U.S. 370 (1996).  "It is a bedrock principle of patent law that the claims of a patent define the invention to which the patentee is entitled the right to exclude."  *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312 (Fed. Cir. 2005) (en banc).

"There is a **_heavy presumption_** that claim terms carry their accustomed meaning in the relevant community at the relevant time."  *Azure Networks, LLC v. CSR PLC*, 771 F.3d 1336,

1347 (Fed. Cir. 2014) (vacated on other grounds) (emphasis added).  Terms are to be construed according to the "ordinary and customary meaning" as viewed by a person of ordinary skill in the art at the time of the invention.  *Phillips*, 415 F.3d at 1312–14.  "[T]he person of ordinary skill in the art is deemed to read the claim term not only in the context of the particular claim in which the disputed term appears, but in the context of the entire patent, including the specification."  *Id.* at 1313.

There are two narrow exceptions when plain and ordinary meaning does not govern.  *See Thorner v. Sony Computer Ent't Am.*, 669 F.3d 1362, 1367 (Fed. Cir. 2012) ("The patentee is free to choose a broad term and expect to obtain the full scope of its plain and ordinary meaning unless the patentee explicitly redefines the term or disavows its full scope.").  "The standards for finding lexicography and disavowal are *exacting*."  *GE Lighting Sols., LLC v. AgiLight, Inc.* 750 F.3d 1304, 1309 (Fed. Cir. 2014) (emphasis added).  To act at his or her own lexicographer, a patentee must "clearly set forth a definition of the disputed claim term" and "clearly express an intent to define the term."  *Thorner*, 699 F.3d at 1365.  To disavow the full scope of a claim term, the specification or prosecution history must contain "a clear disavowal of claim scope."  *Id.* at 1366.  When "an applicant's statements are amenable to multiple reasonable interpretations, they cannot be deemed clear and unmistakable."  *3M Innovative Props. Co. v. Tredegar Corp.*, 725 F.3d 1315, 1326 (Fed. Cir. 2013).

Among the hierarchy of evidentiary sources relied upon for claim interpretation, the specification is the "single best guide" to the meaning of a disputed term other than the claims themselves and is usually dispositive of the analysis. *Phillips*, 415 F.3d at 1315.  However, "[a]lthough the specification may aid the court interpreting the meaning of disputed claim language, particular embodiments and examples appearing in the specification will not generally

be read into the claims." *Comark Commc'ns Inc. v. Harris Corp.*, 156 F.3d 1182, 1187 (Fed. Cir. 1998) (quoting *Constant v. Advanced Micro-Devices, Inc.*, 848 F.2d 1560, 1571 (Fed. Cir. 1988)).  While the file history may be relevant, "it often lacks the clarity of the specification and thus is less useful for claim construction purposes." *Phillips*, 415 F.3d at 1317.

### B.  Construction of Means-Plus-Function Claims

35 U.S.C. § 112, Paragraph 6 allows a patentee to claim a structure as a means for performing a specified function and claim an act as a step for performing a specified function. *Masco Corp. v. United States*, 303 F.3d 1316, 1326 (Fed. Cir. 2002).  If a claim term does not recite "means for" or "step for," there is a rebuttable presumption that § 112, ¶ 6 does ***not*** apply. *Williamson v. Citrix Online, LLC*, 972 F.3d 1339, 1348 (Fed. Cir. 2015) (emphasis added).  To overcome the presumption that § 112, ¶ 6 does not apply, the challenger must demonstrate that the claim term fails to "recite sufficiently definite structure" or else recites "function without reciting sufficient structure for performing that function." *Id.* at 1349 (quoting *Watts v. XL Sys., Inc.*, 232 F.3d 877, 880 (Fed. Cir. 2000).  In the Manual of Patent Examination and Procedure (MPEP), the United States Patent and Trademark Office instructs examiners that "[f]or a term to be considered a substitute for 'means' and lack sufficient structure for performing the function, it must serve as a generic placeholder and thus not limit the scope of the claim to any specific manner or structure for performing the claimed function." *See* "Identifying and Interpreting a 35 U.S.C. 112(f) or Pre-AIA 35 U.S.C. 112, Sixth Paragraph Limitation," MPEP § 2181 (Rev. Aug. 2017), available at https://www.uspto.gov/web/offices/pac/mpep/s2181.html (last accessed Sep. 26, 2019).

### IV.    TERMS 1–5 SHOULD BE GIVEN THEIR PLAIN AND ORDINARY MEANING

Dyfan submits that all claim terms, including Terms 1–5,[2] should be given their plain and ordinary meaning.  As noted above, there is a heavy presumption that claim terms are to be given their plain and ordinary meaning.  *Azure Networks*, 771 F.3d at 1347; *Phillips*, 415 F.3d at 1312–14.  To date, Target has not cited any evidence whatsoever to rebut this heavy presumption and show that the patentee acted as a lexicographer or clearly and unmistakably disavowed the full claim scope afforded by plain and ordinary meaning.  In its answer filed May 10, 2019, Target asserts a defense of prosecution history estoppel, but does not cite any passages from any prosecution history.  *See* Target's Answer at ¶ 45.  On August 13, 2019, Target provided a list of terms for construction, but the list did not include any citations to intrinsic or extrinsic evidence.  *See* Exhibit A.  On August 27, 2019, Target provided its proposed claim constructions.  *See* Exhibit B.  Target indicated that its "proposed terms, phrases, or clauses for constructions are based on information readily available to Defendant at this time."  *Id.* at 2.  However, Target did not provide any citations to evidence (including the "readily available" specification and file history of the Patents-in-Suit) supporting its proposals to construe Terms 1–5 in a manner other than plain and ordinary meaning.  *Id.* at 5–16.  Target also has not contended in its proposed constructions or during the meet and confer process on claim construction that lexicography or disavowal applies to limit any of the disputed terms from those terms' ordinary claim scope.  Thus, the Court should adopt plain and ordinary meaning for all claim terms, including Terms 1–5.

Further, as discussed below, each of Target's proposed constructions for Terms 1–5 are improper for additional reasons.

**Term 1: "building including a plurality of facilities therein" ('292 Claims 1, 15, 28)**

---

[2] A numbered listing of disputed Terms 1–30 is attached at Exhibit C.

| Dyfan's Proposed Construction | Target's Proposed Construction |
|---|---|
| Plain and Ordinary Meaning | building containing two or more distinct venues or stores, each built, installed, or established to serve a particular purpose, brand or company |

By repeating the word "building" in its proposed construction, Target admits that "building" does not require construction, but rather it is the "plurality of facilities therein" that Target seeks to construe.  However, Target's proffered construction of "two or more distinct venues or stores, each built, installed, or established to serve a particular purpose, brand, or company" cannot be correct.  Nothing in the specification or prosecution history requires the scope of "facilities to be so narrow.

The claims themselves provide the best evidence that Target's proposed construction is wrong.  Claim 13 of the '292 Patent, which depends from claim 1, recites two alternatives for the building/facilities.  In the first alternative, "the building includes a shopping mall, and the plurality of facilities include different private facilities associated with different brands."  In the second alternative, "the building includes a retail space and the plurality of facilities have different locations in the retail space."  Target's proposed construction would improperly limit claim 1 to only covering the first alternative presented in claim 13.  Claim 4 of the '292 Patent recites additional alternatives wherein "the plurality of facilities include one or more spaces" or wherein "the plurality of facilities include one or more departments," and Target's proposed construction would improperly limit claim 1 to exclude the "one or more departments" alternative.  Similarly, claim 26 of the '292 Patent, which depends from claim 15, recites two alternatives for the building/facilities and Target's proposed construction would improperly limit claim 1 to exclude at least one of the alternatives.  Claims 29 and 30 also recite alternatives that

may be improperly excluded from the scope of an independent claim (claim 28) if the Court adopts Target's proposed construction for Term 1.

Claim terms are not interpreted in a way that excludes embodiments unless such embodiments are clearly disclaimed in the specification or prosecution history. *See Oatey Co. v. IPS Corp.*, 514 F.3d 1271 (Fed. Cir. 1271, 1276–77 (collecting cases). No such disclaimer exists in the specification or prosecution history of the '292 Patent. In a situation such as this, the doctrine of claim differentiation strongly rebuts Target's proposed construction. *See Liebel-Flarsheim Co. v. Medrad, Inc.*, 358 F.3d 898, 910 (Fed. Cir. 2004) ("where the limitation that is sought to be 'read into' an independent claim already appears in a dependent claim, the doctrine of claim differentiation is at its strongest."); *see also Phillips*, 415 F.3d at 1315 ("[T]he presence of a dependent claim that adds a particular limitation gives rise to a presumption that the limitation in question is not present in the independent claim.").

Thus, the Court should reject Target's proposed construction and determine that no construction is necessary.

**Term 2: "shopping mall" ('899 Claims 2, 7, 12, 30; '292 Claims 4, 13, 26, 29)**

| Dyfan's Proposed Construction | Target's Proposed Construction |
| --- | --- |
| Plain and Ordinary Meaning | Plain and ordinary meaning, i.e. building containing two or more distinct and independent retail stores |

Target argues that Term 2, i.e., "shopping mall" should be given its plain and ordinary meaning, but then provides an improper construction for "shopping mall." Claims 2, 7, and 12 of the '889 Patent, and claims 13, 26, and 29 of the '292 Patent, recite "wherein the building includes a shopping mall." Thus, in at least the embodiments covered by certain claims of the

Patents-in-Suit, a building includes a shopping mall but can also optionally include other things (e.g., a parking garage). However, Target's proposed construction equates "building" to "shopping mall," and, as a result, is at odds with the language of these claims. Further, Target's proposed construction may not even fit into the claims. Plugging Target's proposed construction into the aforementioned claims results in: "wherein the building includes a building containing two or more distinct and independent retail stores." The repeated use of the word "building" causes confusion and possible antecedent basis issues under § 112. *Cf. Phoenix Licensing, L.L.C. v. AAA Life Ins. Co.*, 2015 WL 1813456, at *27 (E.D. Tex. Apr. 20, 2015) (rejecting a proposed construction that replaced an "unambiguous" and "easily understandable" term with a "potentially confusing phrase intended to express the same meaning").

The errors in Target's proposed construction are even more clear when one considers dependent claim 30 of the '899 Patent and dependent claim 4 of the '292 Patent, both of which recite an alternative that "the building includes a retail space in a shopping mall." This language would include embodiments where a (e.g., outdoor) shopping mall includes multiple buildings, each building including retail space(s). Plugging Target's proposed construction into this language results in a nonsensical clause: "the building includes a retail space in a building containing two or more distinct and independent retail stores."

There is simply no lexicography or disavowal that justifies redefining "shopping mall" to limit its ordinary scope, and the Court should reject Target's proposed construction and determine that no construction is necessary.

**Term 3: "an identifier including at least three fields" ('899 Claim 1)**

| Dyfan's Proposed Construction | Target's Proposed Construction |
| --- | --- |

| Plain and Ordinary Meaning | identifier subdivided into at least three data locations |
|---|---|

Target improperly imports limitations from the specification in its proposed construction for "an identifier including at least three fields."  Again, by repeating the word "identifier" in its proposed construction, Target admits that "identifier" does not need a construction.  In this case, Target seeks to redefine "fields" as subdivided data locations.

As an initial matter, the word "location" already appears numerous times in the claims, and therefore construing Term 3 in a manner that also includes the word "location" is confusing.  FIGS. 7–11 of the Patents-in-Suit illustrate a message structure, location header formats, location encoding formats, a service header, and service encoding formats.  '899 Patent, 2:66–3:8.  However, each of these figures is specifically described as being in accordance with "*another embodiment*."  *Id.* (emphasis added).  Therefore, although FIGS. 7–11 illustrate formats in which different portions are separated by vertical lines (which, as best as Dyfan can tell, is Target's support for its proposed "subdivided" language), these *embodiments* do not rise to the level of lexicography or disavowal.  It is improper for a construction to narrow the meaning of "an identifier including at least three fields" to specific examples from the specification absent an indication from the inventor that the claim language was meant to be limited in such a manner.  *See Phillips*, 415 F.3d at 1312; *see also Linear Technology Corp. v. International Trade Com'n*, 566 F.3d 1049, 1057–58 (Fed. Cir. 2009) (refusing to limit claim to cover the only disclosed embodiments or examples in the specification even when only one embodiment is disclosed); *Howmedica Osteonics Corp. v. Wright Medical Tech., Inc.*, 540 F.3d 1337 (Fed. Cir. 2008) (refusing to limit otherwise broad claim language to a single disclosed embodiment where there was nothing in the specification to indicate the inventor meant to limit the claim language).

Thus, the Court should reject Target's proposed construction and determine that no construction is necessary.

**Term 4: "an address portion" ('899 Claims 1, 7, 9, 11, 30; '292 Claim 4)**

| Dyfan's Proposed Construction | Target's Proposed Construction |
|---|---|
| Plain and Ordinary Meaning | a header identifying the destination of the message |

Target once again improperly imports limitations from the specification in a proposed construction, this time for "an address portion."  FIG. 7 of the Patents-in-Suit illustrates "a message structure 700, in accordance with ***another embodiment***" (emphasis added).  In the example of FIG. 7, "[t]he message structure 700 . . . includes an address header 701 which is a location proxy address header that designates the location proxy server . . . to which the message is to be sent.  The message structure 700 also includes a location header 703 which addresses the payload message 701 to a specific location."  '899 Patent, 12:4–10.  However, the fact that certain non-limiting embodiments in the specification describe an address header and a location header is not a sufficient reason to import limitations such as "header" and "destination" into the claims.  It is improper for a construction to narrow the meaning of "an address portion" to specific examples from the specification absent an indication from the inventor that the claim language was meant to be limited in such a manner.  *See Phillips*, 415 F.3d at 1312; *see also Linear Technology Corp. v. International Trade Com'n*, 566 F.3d 1049, 1057–58 (Fed. Cir. 2009) (refusing to limit claim to cover the only disclosed embodiments or examples in the specification even when only one embodiment is disclosed); *Howmedica Osteonics Corp. v. Wright Medical Tech., Inc.*, 540 F.3d 1337 (Fed. Cir. 2008) (refusing to limit otherwise broad

claim language to a single disclosed embodiment where there was nothing in the specification to indicate the inventor meant to limit the claim language).

In addition, Target's proposed construction of "a header identifying *the* destination of the message" implies that the message has a single destination, and is therefore technically flawed. Target's proposed construction improperly turns broadcast messages into unicast messages. In various claims where the term "address portion" appears, the "messages" that the "address portion" are part of are *broadcast* messages. Broadcast messages, by definition, do not have a single destination. In fact, Target's proposed construction is contrary to several claims' explicit recitation that messages are broadcasted "for intended receipt by any of *a plurality of mobile devices*" (*see* '899 Patent, claims 1, 7, 9, 11, emphasis added) or "for intended receipt by a *plurality of mobile devices*" (*see* '292 Patent, claims 1, 15, 28, emphasis added).

Thus, the Court should reject Target's proposed construction and determine that no construction is necessary.

**Term 5: "output, via the at least one mobile device" / "causing to be output, via the at least one mobile device" / "cause to be output, via the at least one mobile device" ('899 Claims 1, 7, 9, 11; '292 Claims 1, 15, 28)**

| Dyfan's Proposed Construction | Target's Proposed Construction |
|---|---|
| Plain and Ordinary Meaning | delivering from the at least one mobile device/causing the delivery from the at least one mobile device |

Target's proposed construction for Term 5 improperly redefines "output" as "deliver." There is no lexicography or disavowal that necessitates such a redefinition. In various claims that include Term 5, what is "output" is "visual information." Construing Term 5 to require "delivery" of "visual information" is needlessly confusing, especially because the claims already include other claim elements regarding "receipt" of messages. For example, dependent claim 30

of the '899 Patent recites alternatives in which "the visual information is caused to be output . . . by being triggered in response to the receipt of the response message" or ". . . by being triggered in response to the receipt of the indication of the receipt of the one or more messages." Similarly, dependent claim 4 of the '292 Patent recites alternatives in which "visual information is caused to be output . . by being triggered in response to the receipt of the response message," "the output of . . . visual information . . . is caused after the receipt of the response message," "the causation of the output of . . . visual information is triggered based on the receipt of the indication of the receipt of the . . . broadcast messages."  Because the ordinary meaning of delivery may imply successful receipt, Target's proposed redefinition of "output" to "delivery" confusingly conflates the claimed "output" of visual information with other claim elements that recite receipt of messages, and with the "delivery" recited in claim 30 of the '899 Patent and claim 4 of the '292 Patent.

Thus, the Court should reject Target's proposed construction and determine that no construction is necessary.

## V.    TERMS 6–30 ARE NOT MEANS-PLUS-FUNCTION ELEMENTS, AND SHOULD BE GIVEN THEIR PLAIN AND ORDINARY MEANING

Dyfan submits that Terms 6–30 are not means-plus-function elements and should be given their plain and ordinary meaning.  During prosecution, Dyfan specifically informed the patent examiner that no claim was intended to be construed under § 112, ¶ 6.  *See* Exhibit D (Office Action Response during prosecution of '899 Patent) at p. 29; Exhibit E (Office Action Response during prosecution of '292 Patent) at p. 50.  Terms 6–30 can generally be divided into

two groups.  The first group includes Terms 6–15, each of which recites an "application" or "code."  The "application" or "code" is "configured for execution," "configured to be executed," or "when executed."  The second group includes Terms 16–30, each of which is a portion of a wherein clause in a system claim.

None of Terms 6–30 recite "means for" or "step for."  Therefore, each of Terms 6–30 is presumed to ***not*** be governed by § 112, ¶ 6.  *Williamson*, 972 F.3d at 1348.  To overcome this presumption, Target must either show that the claim terms fail to recite sufficiently definite structure or that the claim terms recite function without reciting sufficient structure for performing that function.  *Id.* at 1349.  Target cannot meet this burden.

### A.  Terms 6–15

The application/code terms, i.e., Terms 6–15, are similar to the claim terms the Federal Circuit held were not means-plus-function terms in *Zeroclick LLC v. Apple, Inc.*, 891 F.3d 1003 (Fed. Cir. 2018).  In *Zeroclick*, the district court erroneously treated the terms "program" and "user interface code" as nonce words operating as substitute for "means."  *Zeroclick*, 891 F.3d 1008.  The Federal Circuit overturned the district court's holding that the claim terms were subject to § 112, ¶ 6.  *Id.*  The Federal Circuit noted that "the mere fact that the disputed limitations incorporate functional language does not automatically convert the words into means for performing such functions."  *Id.*  In addition, the Federal Circuit noted, the context of the claim terms "strongly suggest[ed] the plain and ordinary meaning of the terms."  *Id.*  For example, the "user interface code" was tethered to code "stored in a memory connected to the processor."  In *SuperSpeed, LLC v. Google, Inc.*, like in *Zeroclick*, "code" for performing a function was held to connote sufficiently definite structure.  *SuperSpeed, LLC v. Google, Inc.*, Civil Action No. H-12-1688, 2014 WL 129225, at *22 (S.D. Tex. Jan. 14, 2014).

Terms 6–15 recite "application" and "code" rather than "program" and "user interface code," but the result is the same as in *Zeroclick*.[3]  Terms 6–15 are not governed by § 112, ¶ 6, at least because the "application" and "code" elements recite sufficiently definite structure and suggest their plain and ordinary meaning.  Each of Terms 6–15 is part of a system claim that recites, *inter alia*, a building, broadcast short-range communication units, a server, and an application or code executable by mobile devices in communication range of one or more of the broadcast short-range communication units.  Thus, Terms 6–15 are tethered to structures recited in the claims, including structures that Target proposes a construction for and does not argue is indefinite (*see, e.g.,* Term 1: "building including a plurality of facilities therein").  The express language of the claim terms strongly suggests their plain and ordinary meaning.  As illustrative examples, Terms 6 and 7 recite that the application or code causes display on a display device of a mobile device, whereas Terms 8 and 9 recite that the application or code causes a mobile device to receive an indication from a broadcast short-range communication unit.

Target also paradoxically argues that some claim terms are indefinite while simultaneously proposing constructions for such language in such claim terms.  For example, Target argues that Terms 10–15, which recite "causing to be output, via the at least one mobile device" or "cause to be output, via the at least one mobile device" are indefinite.  However, Target also provides an affirmative (albeit improper) construction for this language in Term 5.

---

[3] The Federal Circuit's finding that § 112, ¶ 6 is inapplicable in similar circumstances is not limited to just the terms "program" and "user interface code."  *See, e.g., Linear Tech. Corp. v. Impala Linear Corp.*, 379 F.3d 1311, 1319–21 (Fed. Cir. 2004) ("circuit [for performing a function]" is sufficiently definite structure because the claim recited "objectives and operations" of circuit); *Apple Inc. v. Motorola, Inc.*, 757 F.3d 1286, 1295, 1301 (Fed. Cir. 2014) ("heuristic [for performing a function]" is sufficiently definite structure in part because the claim described operation and objectives of heuristic); *Power Integrations, Inc. v. Fairchild Semiconductor Intern., Inc.*, 711 F.3d 1348, 1364 (Fed. Cir. 2013) (further structure added to "circuit" by describing operation of the circuit).

14

Target cannot have it both ways.  The fact that Target is able to propose a construction for Term 5 is itself evidence that supports a finding that Terms 10–15 are not indefinite.

For at least the foregoing reasons, Terms 6–15 recite sufficiently definite structure, and do not recite function without reciting sufficient structure for performing that function. Therefore, Terms 6–15 are not means-plus-function claim elements.  Terms 6–15 should be accorded their plain and ordinary meaning and no construction is necessary.

### B.  Terms 16–30

Terms 16–30 are part of wherein clauses that recite "wherein the system is configured. . . ."  This system includes *inter alia*, a building, broadcast short-range communication units, a server, and an application or code executable by mobile devices in communication range of one or more of the broadcast short-range communication units.  Thus Terms 16–30 do not recite any generic placeholders or nonce words in lieu of structure to perform a function.  Rather Terms 16–30 further delineate the one or more of the structures of the system.  § 112, ¶ 6 allows patentees to define specific structural elements in terms of their function; it does not apply to language that further limits previously defined structure (that is not in §112, ¶6 format).  "For a term to be considered a substitute for 'means' and lack sufficient structure for performing the function, it must serve as a ***generic placeholder*** and thus ***not limit the scope of the claim to any specific manner or structure*** for performing the claimed function." *See* "Identifying and Interpreting a 35 U.S.C. 112(f) or Pre-AIA 35 U.S.C. 112, Sixth Paragraph Limitation," MPEP § 2181 (Rev. Aug. 2017), available at https://www.uspto.gov/web/offices/pac/mpep/s2181.html (last accessed Sep. 26, 2019).  Terms 16–30 cannot be means-plus-function elements, because they are part of wherein clauses that define the recited structure of the claims (e.g., the system that includes a building, broadcast

short-range communication units, etc.).  There are no new and separate structural elements that Terms 16–30 are defining by functionality.  Thus, Terms 16–30 are not means-plus-function elements and should be accorded their plain and ordinary meaning.

## VI.    CONCLUSION

For the reasons described above, the Court should reject Target's proposed constructions, deny Target's request to declare the asserted claims as governed by 35 U.S.C. § 112, ¶ 6, deny Target's request to declare the asserted claims indefinite, and find that all claim terms are to be accorded their plain and ordinary meaning.

Dated:  September 26, 2019                    Respectfully submitted,


                                             By:     */s/ Aakash S. Parekh*
                                             Aakash S. Parekh
                                             Texas Bar No. 24059133
                                             aparekh@tlgiplaw.com
                                             Jeffrey G. Toler
                                             Texas Bar No. 24011201
                                             jtoler@tlgiplaw.com
                                             Christopher M. Scurry (*pro hac vice*)
                                             Texas Bar No. 24076681
                                             cscurry@tlgiplaw.com

                                             **TOLER LAW GROUP, PC**
                                             8500 Bluffstone Cove, Suite A201
                                             Austin, Texas 78759
                                             Tel. (512) 327-5515
                                             Fax (512) 327-5575

                                             *Attorneys for Dyfan, LLC*

## CERTIFICATE OF SERVICE

I hereby certify that on March 15, 2019, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will send notification of such filing to all counsel of record in the above-reference matter.

*/s/ Aakash S. Parekh*
Aakash S. Parekh
Texas Bar No. 24059133
aparekh@tlgiplaw.com

**TOLER LAW GROUP, PC**
8500 Bluffstone Cove, Suite A201
Austin, Texas 78759
Tel. (512) 327-5515
Fax (512) 327-5575

17