**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION**

| | |
|---|---|
| DYFAN LLC,<br><br>   Plaintiff,<br><br> v.<br><br>TARGET CORPORATION,<br><br>   Defendant. | C.A. No. 6:19-cv-00179-ADA<br><br><br>**JURY TRIAL DEMANDED** |

**PLAINTIFF DYFAN LLC'S
<u>RESPONSIVE CLAIM CONSTRUCTION BRIEF</u>**

     /s/ *Timothy Devlin*
     Timothy Devlin (Bar No. 4241)
     Derek Dahlgren (admitted *pro hac vice*)
     Devlin Law Firm LLC
     1526 Gilpin Avenue
     Wilmington, DE  19806
     Telephone:  (302) 449-9010
     tdevlin@devlinlawfirm.com
     ddahlgren@devlinlawfirm.com

     *Attorneys for Plaintiff*
     *DYFAN LLC*

DATED:  November 22, 2019

## TABLE OF CONTENTS

I.    INTRODUCTION ................................................................................................ 1

II.   TARGET'S PROPOSED CONSTRUCTION OF THE DISPUTED TERMS SHOULD
BE REJECTED .................................................................................................... 2

   A.  Non-§ 112, ₱ 6 Claim Terms ....................................................................... 2

      1.  Term 1: "building including a plurality of facilities therein" ('292 cls. 1, 15, 28) .......... 2

      2.  Term 2: "shopping mall" ('899 cls. 2, 7, 12, 30; '292 cls. 4, 13, 26, 29) ...................... 4

      3.  Term 3: "identifier including at least three fields" ('899 cl. 1)........................................ 5

      4.  Term 4: "an address portion" ('899 cls. 1, 7, 9, 11, 30; '292, cl. 4) .............................. 7

      5.  Term 5: "output, via the at least one mobile device" / "causing to be output, via the at
      least one mobile device" / "cause to be output, via the at least one mobile device" ('899 cls.
      1, 7, 9, 11; '292 cls. 1, 15, 28) ..................................................................................... 10

   B.  Terms 6 through 15: "Code" / "Application" Terms ('899 cls. 1, 7, 9, 11;'292 cls. 1, 15,
   28)  13

      1.  The Disputed Claim Limitations Do Not Invoke § 112, ₱ 6 and Target Has Not
      Rebutted the Presumption Against Its Application.................................................................. 13

      2.  Target Has Not Demonstrated that the Disputed Limitations Are Indefinite by Clear and
      Convincing Evidence Even if Governed by § 112, ₱ 6 .......................................................... 19

   C.  Terms 16 Through 30: "System" Terms ('899 cls. 1, 7, 9, 11, 25; '292 cl. 12) ................. 20

      1.  The Disputed Claim Limitations Do Not Invoke § 112, ₱ 6, and Target Has Not
      Rebutted the Presumption Against Its Application.................................................................. 20

      2.  Target Again Has Not Demonstrated that the Disputed Limitations Are Indefinite by
      Clear and Convincing Evidence Even if Governed by § 112, ₱ 6 ......................................... 22

III.  CONCLUSION .................................................................................................... 23

## TABLE OF AUTHORITIES

### *Published Cases*

*Aloft Media, LLC v. Adobe Sys.*, 570 F. Supp.2d 887 (E. D. Tex. 2008) . . . . . . . . . . . . . . . . . . .15

*Aristocrat Techs. Austl. PTY Ltd. v. Int'l Game Tech.*,
   521 F.3d 1328 (Fed. Cir. 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*BASF Corp. v. Johnson Matthey Inc.*, 875 F.3d 1360 (Fed. Cir. 2017) . . . . . . . . . . . . . . . . . 14

*CAE Screenplates Inc. v. Heinrich Fiedler GmbH*, 224 F.3d 1308 (Fed. Cir. 2000) . . . . . . . . .12

*Helmsderfer v. Bobrick Washroom Equip., Inc.*, 527 F.3d 1379 (Fed. Cir. 2008) . . . . . . . . . . .12

*King Pharm. Inc. v. Purdue Pharma L.P.*, 718 F. Supp. 2d 703 (W.D. Va. 2010) . . . . . . . . . . 21

*Liebel-Flarsheim Co. v. Medrad, Inc.*, 358 F.3d 898 (Fed. Cir. 2004) . . . . . . . . . . . . . . . . . . 8

*Linear Technology Corp. v. International Trade Com'n*,
   566 F.3d 1049 (Fed. Cir. 2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .7

*Phillips v. AWH Corp.*, 415 F.3d 1303 (Fed. Cir. 2005) (*en banc*) . . . . . . . . . . . . . . . . . . . . . . 8

*TecSec, Inc. v. IBM*, 731 F.3d 1336 (Fed. Cir. 2013) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8,14

*Williamson v. Citrix Online, LLC*, 792 F.3d 1339 (Fed. Cir. 2015) . . . . . . . . . . . . . . . . . . . . .13

*Zeroclick, LLC v. Apple Inc.*, 891 F.3d 1003 (Fed. Cir. 2018) . . . . . . . . . . . . . . . . . . . . . . . . . 15

### *Unpublished Cases*

*Advanced Ground Info. Sys. v. Life360, Inc.*, No. 14-80651-CV,
   2014 U.S. Dist. LEXIS 187770 (S.D. Fla. Nov. 21, 2014) . . . . . . . . . . . . . . . . . . . . . . . .16

*Intell. Ventures II LLC v. BITCO Gen. Ins. Corp.*, No. 6:15-cv-59,
   2016 U.S. Dist. LEXIS 3299 (E.D. Tex. Jan. 11, 2016) . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Kit Check, Inc. v. Health Care Logistics, Inc.*, No. 2:17-CV-1041,
   2019 U.S. Dist. LEXIS 148398 (S.D. Ohio Aug. 30, 2019) . . . . . . . . . . . . . . . . . . . . . 14

*Phx. Licensing, L.L.C. v. AAA Life Ins. Co.*, No. 2:13-CV-1081,
   2015 U.S. Dist. LEXIS 51245 (E.D. Tex. Apr. 18, 2015) . . . . . . . . . . . . . . . . . . . . . . . . 4

*Realzoom LLC v. L Brands, Inc.*, No. 2:17-CV-00118-RWS,
   2018 U.S. Dist. LEXIS 83838 (E.D. Tex. May 18, 2018) . . . . . . . . . . . . . . . . . . . . . . . .14

*Smartflash LLC v. Apple Inc.*, No. 6:13-CV-447-JRG-KNM,
  2015 U.S. Dist. LEXIS 91669 (E.D. Tex. July 6, 2015) . . . . . . . . . . . . . . . . . . . . . . . . . . . .15

*SyncPoint Imaging, LLC v. Nintendo of Am. Inc.*, No. 2:15-cv-00247-JRG-RSP,
  2016 U.S. Dist. LEXIS 677 (E.D. Tex. Jan 5, 2016) . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Typemock, Ltd. v. Telerik, Inc.*, No. 17-10274-RGS,
  2018 U.S. Dist. LEXIS 149110 (D. Mass. Aug. 31, 2018) . . . . . . . . . . . . . . . . . . . . . . . 16

### Statutes

35 U.S.C. § 112, ¶ 6. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *18*

## I.      INTRODUCTION

Plaintiff Dyfan LLC ("Plaintiff" or "Dyfan"), by and through its undersigned counsel, hereby submits its Responsive Claim Construction Brief in opposition to Defendant Target Corporation's ("Defendant" or "Target") proposed construction of disputed terms in U.S. Patent No. 9,973,899 (the "'899 patent") and U.S. Patent No. 10,194,292 (the "'292 patent"; collectively with the '899 patent, "patents in suit").

During the meet and confer process, Dyfan proposed that no terms required construction and that all terms be given their plain and ordinary meaning.  Target, in contrast, asserted that over forty terms required construction.  Target's Opening Claim Construction Brief, filed on September 26, 2019, proposed constructions for thirty of those terms.  (*See* D.I. 31 at 9 & n. 4; *id.* at 23-28.)  Target's Brief groups the disputed claim terms into three categories: (1) non-§ 112, ¶ 6 terms (terms 1 through 5); (2) the "code" / "application" group (terms 6 through 15); and (3) the "system" group (terms 16 through 30).

As set forth below, the Court should reject all of Target's proposed constructions.  For the first group, Target's proposed constructions should be rejected because they are contradicted by the intrinsic evidence.  For the second group, Target's proposed means-plus-function constructions and indefiniteness arguments should be rejected because Target has not overcome the presumption that the "code" / "application" limitations are not governed by § 112, ¶ 6 and cannot do so as the claims recite sufficiently definite structure for those limitations.  For the third "system" group, Target's proposed means-plus-function constructions and indefiniteness arguments should be rejected because, once more, Target has not overcome the presumption that the limitations are not governed by § 112, ¶ 6 and cannot do so.

1

## II.     TARGET'S PROPOSED CONSTRUCTION OF THE DISPUTED TERMS SHOULD BE REJECTED

Target's Opening Claim Construction Brief essentially lays out three claim construction disputes before the Court:

1. Construction of non-§ 112, ¶ 6 claim terms 1-5;

2. Construction of "code" / "application" terms 6-15; and

3. Construction of "system" terms 16-30.

As discussed below, Target's claim construction methodology is flawed as a matter of law and fact.  Moreover, for terms 1-5 Target's definitions are inconsistent with the claims, the shared specification, and the file histories.

### A.     Non-§ 112, ¶ 6 Claim Terms

The Court should reject Target's proposed construction and determine that no construction is necessary.  While acknowledging that "words of a claim are generally given their 'ordinary and customary meaning'" (D.I. 31 at 7), Target nonetheless attempts to conjure up a controversy where none exists to narrow the claims.  Many of the proposals would impermissibly read out many of the disclosed embodiments of the patent or result in nonsensical or confusing phrases that would only lead to further disputes—none of which find support in the intrinsic record.

### 1.     Term 1: "building including a plurality of facilities therein" ('292 cls. 1, 15, 28)

| Dyfan's Proposed Construction | Target's Proposed Construction |
|---|---|
| Plain and ordinary meaning | building containing two or more distinct venues or stores, each built, installed, or established to serve a particular purpose, brand or company (D.I. 31 at 26.) |

Here, the dispute centers on the meaning of "plurality of facilities therein."  Target's proposed construction is "two or more distinct venues or stores, each built, installed, or

established to serve a particular purpose, brand, or company." Its construction is unsupported

and should be rejected.

First, Target's construction is at odds with the claims. Claim 4 of the '292 patent recites

two alternatives wherein "the plurality of facilities include one or more spaces" or wherein "the

plurality of facilities include one or more departments." (The '299 patent, 34:14 & 34:15.)

Target's proposed construction would improperly limit claim 1 to exclude the "one or more

departments" alternative. Similarly, claim 26 of the '292 patent, which depends from claim 15,

recites two alternatives for the building/facilities, and Target's proposed construction would

improperly limit claim 26 to exclude at least one of the alternatives. Claims 29 and 30 also recite

alternatives that may be improperly excluded from the scope of an independent claim (claim 28)

if the Court adopts Target's proposed construction.

Second, there is no support for limiting facilities to something "built, installed or

established to serve a particular purpose, brand, or company," either within the patents in suit or

the priority applications.[1] Indeed, the language concerning built, installed or established in the

context of facilities or buildings is found nowhere in the claims nor is it compelled by the patents

or the priority applications. Further, Target's construction seeks to impose a singular "purpose,

brand, or company" when a facility may be multipurpose, include multiple brands, or include

multiple companies. Target's construction unduly limits the claims in at least these respects.

Third, Target's construction would lead to further disputes about the meaning of its

proposed construction—*e.g.*, would the venue or store have to be originally built, installed or

established in the building, or would it encompass a building in which stores and venues had

changed over time? Would Target's construction apply to multipurpose facilities, or those with

---

[1] The patents in suit claim priority back to U.S. Provisional Patent Application No. 61/517,584 (the "'584 provisional") and U.S. Patent Application No. 13/410,197 (the "'197 application"; collectively, with the '584 provisional, the "priority applications").

multiple brands or companies?[2]  There is no reason to add these ambiguities to the claims as Target requests.

Accordingly, Target's proposed construction should be rejected and the Court should determine no construction is necessary.

**2.      Term 2: "shopping mall" ('899 cls. 2, 7, 12, 30; '292 cls. 4, 13, 26, 29)**

| Dyfan's Proposed Construction | Target's Proposed Construction |
| --- | --- |
| Plain and ordinary meaning | building containing two or more distinct and independent retail stores (D.I. 31 at 25.) |

Target argues that term 2 (*i.e.*, "shopping mall") should be given its plain and ordinary meaning but then provides an improper construction that improperly limits the term.  That is, Target argues that shopping mall is a building containing two or more distinct and independent retail stores.  Once again, there is no support for Target's construction.

First, Target's construction is at odds with the language of the claims.  Claims 2, 7, and 12 of the '889 patent, and claims 13, 26, and 29 of the '292 patent recite "wherein the building includes a shopping mall."  Thus, in these claims, a building includes a shopping mall but can also optionally include other things (*e.g.*, a parking garage).  In contrast, Target's proposed construction equates the terms "building" with "shopping mall" and thus conflicts with the language of these claims.

Second, Target's proposed construction would only cause confusion.  Using Target's proposed construction results in:  "wherein the building includes a building containing two or more distinct and independent retail stores."  The repeated use of the word "building" would cause confusion and possible antecedent basis issues under § 112.  *Cf. Phx. Licensing, L.L.C. v.*

---

[2] Dyfan maintains that Target's construction would not cover such a building, but it is not clear whether Target has a different position.  As such, Target's construction likely would lead to further disputes about the meaning of the claim.

*AAA Life Ins. Co.*, No. 2:13-CV-1081, 2015 U.S. Dist. LEXIS 51245, at *96 (E.D. Tex. Apr. 18, 2015) (rejecting a proposed construction that replaced an "unambiguous" and "easily understandable" term with a "potentially confusing phrase intended to express the same meaning"). Dependent claim 30 of the '899 patent and dependent claim 4 of the '292 patent make this point even clearer. Both recite an alternative in which "the building includes a retail space in a shopping mall." Using Target's proposed construction results in a redundant and confusing clause: "the building includes a retail space in a building containing two or more distinct and independent retail stores."

Third, Target's construction also fails to account for the ordinary meaning of shopping mall, which includes outdoor shopping malls comprising multiple buildings. There is simply no lexicography or disavowal that justifies redefining "shopping mall" to limit its ordinary scope, which would be well understood by a person of skill in the art and the jury. Adopting Target's construction would have the opposite effect, creating confusion where none should exist.

For at least these reasons, the Court should reject Target's proposed construction and determine that no construction is necessary.

### 3.    Term 3: "identifier including at least three fields" ('899 cl. 1)

| Dyfan's Proposed Construction | Target's Proposed Construction |
|---|---|
| Plain and ordinary meaning | identifier subdivided into at least three data locations (D.I. 31 at 23.) |

Here, the dispute centers on "fields." Target seeks to redefine the admittedly well-known term "fields" as subdivided "data locations." That is improper for at least the following four reasons.

First, the claim language itself does not support Target. Target's arguments essentially focus exclusively on the '584 provisional and '197 application. Target ignores the claim language itself, except noting in passing that the claim language refers to an identifier being

stored and transmitted as part of a message.  That lends no support to Target's overly narrowing construction wherein field is defined as subdivided "data locations."  The claims clearly state that a message contains, among other things, an identifier including at least three fields.  (*See* the '899 patent, 29:14-16 ("one or more messages including an address portion and the identifier including the at least three fields").)  The claims further state that at least one value of the one or more of the at least three fields of the identifier is associated with particular location-relevant information.  (*Id.* at 29:16-19.)  There is no reference to subdivision or data locations, and thus no support for Target's construction in the claims.

Second, Target's reliance on the '584 provisional and ' 197 application does not support its proposed construction.  Target admits that the priority applications refer to identifiers in the context of a location identifier and a service identifier.  (D.I. 31 at 28.)  Target then focuses on figs. 7 and 8 of the '584 provisional as allegedly depicting the subdivision of a message into "discrete data locations" (*id.* at 28), purportedly warranting its proposed construction.

But Target ignores how these figures are discussed in the '584 provisional itself.  As a threshold matter, figs. 7 and 8 are entitled "Location Header Formats" and "Location Encoding Formats."  Additionally, the '584 provisional states that "[t]he location data in the location header maybe encoded in many different types and formats.  Figure 7 shows one preferred mode . . . ."  (D.I. 31-2 at 20.)  The '584 provisional further states with respect to fig. 8 that it "shows a list of different locations types and their respective data formats.  This list is intended to give someone skilled in the art a good understanding how to implement various location type and data combinations. . . .  There are many data formats that can be used to encode a specific location[,] a road, or an area."  (D.I. 31-2 at 21.)

Thus, the provisional makes clear that the formats shown in figs. 7 and 8 are ***examples***. There is no lexicography or disavowal that would warrant limiting "field" as Target suggests

anywhere in the earlier applications, even assuming figs. 7 and 8 depicted what Target suggests

(they do not).  *See Linear Technology Corp. v. International Trade Com'n*, 566 F.3d 1049, 1057-

58 (Fed. Cir. 2009) (refusing to limit claim to cover the only disclosed embodiments or examples

in the specification even when only one embodiment is disclosed).

Third, Target seeks to add "subdivided" and "data location" to the claims despite there

being no support in the intrinsic record for these terms.  The term "subdivided" is not referred to

in the priority applications or patents in suit.  Likewise, "data location" is not referred to either in

the patents in suit, or the '584 provisional or '197 application.  That is, there is no instance where

field is so defined or narrowed.

Fourth, defining field as subdivided data locations is unnecessary and would only add

confusion given the many references to location in the asserted claims and what constitutes

"subdivided."  Claim construction is meant to add clarity, not confusion.  *Cf. Phx. Licensing*,

2015 U.S. Dist. LEXIS 51245, at *96 (improper to replace an "unambiguous" and "easily

understandable" term with a "potentially confusing phrase intended to express the same

meaning").

The Court should reject Target's proposed construction for at least these reasons and

determine no construction is necessary for this known term of art.

4.     **Term 4: "an address portion" ('899 cls. 1, 7, 9, 11, 30; '292, cl. 4)**

| Dyfan's Proposed Construction | Target's Proposed Construction |
|---|---|
| Plain and ordinary meaning | a header identifying the destination of the message (D.I. 31 at 23-25.) |

Once again Target improperly seeks to read in language to the claim that is not supported

by the intrinsic record and would only lead to confusion.  Specifically, Target asserts that "an

address portion" refers to "a header that identifies the destination of the message."  The patents

in suit do not support Target.

First, fig. 7 of the patents in suit illustrates "a message structure 700, in accordance with *another embodiment*." (*See* the '899 patent, 11:56-57.)  Thus, it is not a limiting statement and does not rise anywhere close to the level of lexicography or disavowal.  *See, e.g.*, *Phillips v. AWH Corp.*, 415 F.3d 1314-16 (Fed. Cir. 2005) (*en banc*) (courts also look to the specification for the express definitions of any claim terms where the inventor acts as her own lexicographer, but it is improper to import limitations from the specification into the claims); *TecSec, Inc. v. IBM*, 731 F.3d 1336, 1346 (Fed. Cir. 2013) ("[F]or prosecution disclaimer to attach, our precedent requires that the alleged disavowing actions or statements made during prosecution be both clear and unmistakable.").

Second, Target's proposed construction would introduce a new word "header" into the claim.  However, that same limitation is specifically introduced for the first time in claim 30 of the '899 patent, which depends from claim 11.  (*See id.* at 38:14-24 ("[t]he system of claim 11, wherein . . . at least one of the plurality of fields is part of a header"); *id.* at 38:27 ("the plurality of fields are part of a header").)  Thus, the doctrine of claim differentiation strongly rebuts Target's proposed construction.  *See Liebel-Flarsheim Co. v. Medrad, Inc.*, 358 F.3d 898, 910 (Fed. Cir. 2004) ("[W]here the limitation that is sought to be 'read into' an independent claim already appears in a dependent claim, the doctrine of claim differentiation is at its strongest."); *see also Phillips*, 415 F.3d at 1315 ("[T]he presence of a dependent claim that adds a particular limitation gives rise to a presumption that the limitation in question is not present in the independent claim.").

Third, the court should reject Target's construction because Target is trying to import the term "destination" into the claim.  However, in the specification, there are multiple disclosed examples of addressing to proxies / gateways / outlets that are not the ultimate destination, but rather intermediate points that forward to the ultimate destination:  Importing the term

"destination" would improperly exclude such disclosed embodiments.  Examples of disclosed

embodiments that would be improperly excluded, include the following:

> For example, the data/content providers 501 may send content to a location, the
> location proxy servers 505A-N may identify the *__addresses__ of network information*
> *__outlets__ 508A-N* relevant to the location (*e.g.*, by querying the location database(s)
> 509 for network information outlets 508A-N having a location attribute, etc.
> matching the location), and may forward the content to those *identified __addresses__*
> *of the relevant network information __outlets__ 508A-N, which may then __forward__ the*
> *content to the mobile devices 504 connected thereto*.

(The '899 patent, 10:34-44.) [3]

> The message structure 700 further includes an a*__ddress__ header 701 which is a*
> *location __proxy__ address header* that designates the *__location proxy server__* (*e.g.*, item
> 505A-N) to which the message is to be sent.  The message structure 700 also
> includes a location header 703 which addresses the payload message 701 to a
> specific location.  Moreover, the message structure 700 includes a service header
> 704 which may describe a type of service to be used for transmitting the message,
> along with optional attributes relevant for service delivery.  *It should be noted that*
> *the location header and service header may be implemented such that they can*
> *be extended to provide a wide variety of different ways to encode or reference*
> *different types of location or service related information*.

(*Id.* at 12:4-18.  *See also id.* at 10:34-44 ("*__[T]he location proxy servers__ 505A-N . . . may*

*__forward__ the content to those identified addresses of the relevant network information outlets*

*508A-N . . . .*").)

Fourth, Target's proposed construction would introduce a new word "identifying" into

the claim, in the context of "*identifying* the destination of the message."  However, in the

specification, there are multiple disclosed examples of sending messages without specifically

"identifying" the destination of the message.  For example, fig. 7 of the patents in suit

corresponds to fig. 6 of the '584 provisional.  In discussing figs. 6 and 12, the provisional notes

that the Network I/O Unit may "*__broadcast[] the information to all__* local mobile terminals in

communication range.  Alternately . . . one or more of the Network I/O Units . . . may also send

---

[3] Unless otherwise indicated, emphasis in this brief has been added.

the message individually to the current network addresses of the mobile terminals known to be in communications range of the Network I/O Unit."  (D.I. 31-2 at 16, ¶ 8.)  Because the message may be broadcast, the particular destination may be unknown.  Thus, importing the term "identifying", in the context of "***identifying*** the destination of the message," would exclude the foregoing disclosed "broadcast" embodiment, which is improper.

Finally, related to the previous arguments, Target's construction also suggests a single destination (*i.e.*, the destination), which would read out the "broadcast" embodiment discussed above because there are ***multiple*** resulting locations where the message is received, whether known or unknown.  Target's construction ignores these aspects of the various embodiments by reading them out of the claims.  In addition, ***the claims <u>themselves</u>*** require "broadcasting".  (*See, e.g.*, the '899 patent, 29:20-27 ("broadcast . . . the one or more messages including the address portion . . . for intended receipt by any of a plurality of mobile devices in a communication range of the at least one broadcast short-range communications unit").)  Thus, not only would Target's proposed construction improperly exclude disclosed embodiments, but it would also contradict the claim language itself.

Target's construction should be rejected for at least these reasons and the Court should determine no construction is necessary.

### 5.    Term 5: "output, via the at least one mobile device" / "causing to be output, via the at least one mobile device" / "cause to be output, via the at least one mobile device" ('899 cls. 1, 7, 9, 11; '292 cls. 1, 15, 28)

| Dyfan's Proposed Construction | Target's Proposed Construction |
|---|---|
| Plain and ordinary meaning | delivering from the at least one mobile device/causing the delivery from the at least one mobile device (D.I. 31 at 28.) |

Here, Target seeks to redefine output as "delivery."  The claims do not support such a construction, nor is there any lexicography or disavowal that supports such a construction.

First, various claims state that what is "output" is "visual information."  Construing the claims to require "delivery" of "visual information" is needlessly confusing and unduly limiting.  Various claims include limitations regarding the "broadcast" and "receipt" of messages as well as messages being "sent."  Limiting output to delivery, particularly in the context of visual information would be confusing and is unsupported in view of these other claim terms that connote transmission of information, as well as the use of "send" and "transmission" in the specification.  (*See, e.g.*, D.I. 31-2 at 13 ("transmission or reception of location addressed data"), at 17, ¶ 1 ("sends," "broadcast") & ¶ 3 ("sends"); at 33 fig. 12 ("sends messages," "receives messages").)

Further, to emphasize the potential confusion caused by Target's proposed construction, consider a hypothetical where the device outputs something visually (e.g., displays something), but the user does not "receive" the visual information.  Is the information then not considered "delivered"?  In other words, would delivery hinge on whether a user looks at their screen?  Thus, by limiting "output" to "delivery," Target's proposed construction improperly imports a limitation that will only set the stage for addressing such absurd arguments at trial.

Second, claim differentiation again weighs heavily against Target's construction.  Claim 30 of the '899 patent recites, in part:

> [The system of claim 11, wherein at least one of] … the option includes a selectable option for information ***delivery*** being conditioned; the option includes a selectable option for information ***delivery*** being conditioned on a service attribute; the option includes a selectable option related to at least one aspect of information ***delivery*** . . . .

(The '899 patent, 41:3-8.)  *See Liebel-Flarsheim*, 358 F.3d at 910 ("[W]here the limitation that is sought to be 'read into' an independent claim already appears in a dependent claim, the doctrine of claim differentiation is at its strongest."); *see also Phillips*, 415 F.3d at 1315.  Of note, claim 30 ***also separately*** refers to "output."  (The '899 patent, 41:14-24.)

Federal Circuit precedent dictates that different claim terms present in the same claim are presumed to have different meanings. *Applied Med. Res. Corp. v. U.S. Surgical Corp.*, 448 F.3d 1324, 1333 n.3 (Fed. Cir. 2006) ("[T]he use of two terms in a claim requires that they connote different meanings. . . ."); *see also Helmsderfer v. Bobrick Washroom Equip., Inc.*, 527 F.3d 1379, 1382 (Fed. Cir. 2008) (finding presumption of different meanings not rebutted); *CAE Screenplates Inc. v. Heinrich Fiedler GmbH*, 224 F.3d 1308, 1317 (Fed. Cir. 2000).  Here, Target has provided no evidence to rebut this presumption that these two different claim terms carry different meanings.

Third, limiting output to delivery unduly limits the ordinary meaning of the term.  That is, it would exclude disclosed embodiments where output encompasses display and production, *e.g.*, producing visual information.  Specifically, the '584 provisional application refers to "displaying of certain elements of the payload message, for example, in the form of text, images or video" and the "produc[tion]" of "other types of user interface signals usable by the mobile device or its . . . interfaces."  (D.I. 31-2 at 16, ¶ 10 (step 1591c); at 33, fig. 12 (step 1591c).)  Importantly, as illustrated by the hypothetical set forth above, it is not clear whether the information is considered "delivered" when the information is "displayed" or "produced," but a user has not taken "delivery" by looking at their screen, etc.   Thus, to the extent that the term "delivery" is argued to not cover the situation above, Target's importation of the term "delivery" would improperly exclude such disclosed embodiments, where "output" is clearly disclosed to include mere display or production (without any condition of actual delivery).

Related to the above argument, it is important to note that the specification clearly teaches that "any of the message ***delivery*** and/or ***display*** . . . disclosed herein may be carried out utilizing one or more components of [a] . . . mobile device (*e.g.* smartphone, tablet, etc.)."  To this end, "delivery" is clearly disclosed to be an alternative of "display," both of which are

examples of an "output."  It would thus be improper to attempt to import, as a claim limitation, one disclosed example of "output" (*i.e.*, delivery) to the exclusion of another disclosed example of "output" (*i.e.*, display).

In sum, for at least the reasons noted above and in Dyfan's opening brief, the Court should reject Target's proposed constructions of terms 1 through 5 and determine that no construction is necessary in each instance.

**B.      Terms 6 through 15: "Code" / "Application" Terms ('899 cls. 1, 7, 9, 11;'292 cls. 1, 15, 28)**

Each term in the second group recites an "application" or "code."[4]  Target asserts that each term in this group is governed by § 112, ⁋ 6.  This assertion is wrong as a matter of law and a matter of fact and therefore should be rejected.  And even if Target were right (it is not), the disclosure of the patents in suit includes adequate structure to support the alleged functionality.

**1.      The Disputed Claim Limitations Do Not Invoke § 112, ⁋ 6 and Target Has Not Rebutted the Presumption Against Its Application**

**a.      The Law Regarding Application of § 112, ⁋ 6 to Non-Means Terms Weighs Against Target**

Target seeks to stretch the case law far beyond its limits.  If a claim term does not recite "means for" or "step for," there is a rebuttable presumption that § 112, ¶ 6 does not apply. *Williamson v. Citrix Online, LLC*, 792 F.3d 1339, 1348 (Fed. Cir. 2015).  To overcome this presumption, the challenger must demonstrate that the claim term fails to "recite sufficiently definite structure" or else recites "function without reciting sufficient structure for performing that function." *Id.* at 1349 ("The standard is whether the words of the claim are understood by persons of ordinary skill in the art to have a sufficiently definite meaning as the name for

---

[4] The "application" or "code" is "configured for execution" (the '899 patent, 29:48, 31:66 & 34:1), "configured to be executed" (the '899 patent, 35:65; the '292 patent, 31:7, 40:29 & 43:65), or "when executed" (the '899 patent, 30:35, 32:43, 34:43 & 36:32; the '292 patent, 31:64, 41:47 & 44:56).

structure.").  Where the presumption is rebutted, "[t]he party alleging that the specification fails to disclose sufficient corresponding structure must make that showing by ***clear and convincing evidence***."  *TecSec, Inc. v. IBM*, 731 F.3d 1336, 1349 (Fed. Cir. 2013); *see also BASF Corp. v. Johnson Matthey Inc.*, 875 F.3d 1360, 1365 (Fed. Cir. 2017).

      "To determine if the claim recites sufficient structure, it is sufficient if the claim term is used in common parlance or by persons of skill in the pertinent art to designate structure, even if the term covers a broad class of structures and even if the term identifies the structures by their function."  *TecSec*, 731 F.3d at 1347.  "A claim term may have sufficiently definite structure even if it 'does not specifically evoke a particular structure.'  In other words, the claim 'may describe ***a class of structures***.'"  *Kit Check, Inc. v. Health Care Logistics, Inc.*, No. 2:17-CV-1041, 2019 U.S. Dist. LEXIS 148398, at *19 (S.D. Ohio Aug. 30, 2019) (internal citations omitted).  *See also id.* at *23-24 (finding that claims referring to a processor as a self-defined object such as "data processor," or "content processor," *i.e.*, commercially available off-the shelf processors, are not means-plus-function, and that a POSITA would understand the term "processor" in that context to provide sufficient structure); *BASF*, 875 F.3d at 1368 (finding the labels for certain catalysts were used "as merely structure-describing shorthands" and that the defendant failed to show that this patent departs from a POSITA's general understanding).

      Here, Target misguidedly looks to *Williamson* to support its allegation that "application" and "code" are nonce words.  (D.I. 31 at 11.)  *Williamson* did not hold that the terms "code" / "application" were nonce words or synonymous with "means."  *See generally Williamson*, 792 F.3d at 1339-55; *see also Realzoom LLC v. L Brands, Inc*., No. 2:17-CV-00118-RWS, 2018 U.S. Dist. LEXIS 83838, at *32 (E.D. Tex. May 18, 2018) ("*Williamson* did not hold that the term 'application' is a nonce word.").

Contrary to Target's arguments, both the Federal Circuit and numerous district courts have held post-*Williamson* that "code" and "application" were not substitutes for "means." *See, e.g.*, *Zeroclick, LLC v. Apple Inc.*, 891 F.3d 1003, 1008 (Fed. Cir. 2018) (holding the terms "program" and "user interface code" are not means-plus-function and not nonce words used as a substitution for "means"); *Realzoom*, 2018 U.S. Dist. LEXIS 83838, at *32-33 (finding that the claims, specification, and the flow chart showed that Defendants have failed to overcome the presumption that the claimed "enlargement application" is not a means-plus-function limitation); *Smartflash LLC v. Apple Inc.*, No. 6:13-CV-447-JRG-KNM, 2015 U.S. Dist. LEXIS 91669, at *10 (E.D. Tex. July 6, 2015) (finding post-Williamson that "processor" and "code" are not "nonce" words).  *See also Aloft Media, LLC v. Adobe Sys.*, 570 F. Supp.2d 887, 898 (E. D. Tex. 2008) (structure-connoting term "code" coupled with the description of the computer code's operation, provided in the "wherein" clauses provided sufficient structural meaning); *SyncPoint Imaging, LLC v. Nintendo of Am. Inc.*, No. 2:15-cv-00247-JRG-RSP, 2016 U.S. Dist. LEXIS 677, at *59, 69, 71-72 (E.D. Tex. Jan 5, 2016) (finding "processor" and "instructions" connote structure and providing a list of cases where courts have found terms "computer code that [performs a function]," "program code for [performing a function]," "computer readable program code," "software . . . configured to [perform a function]," etc., to preclude application of § 112, ¶6); *Intell. Ventures II LLC v. BITCO Gen. Ins. Corp.*, No. 6:15-cv-59, 2016 U.S. Dist. LEXIS 3299, at *26 (E.D. Tex. Jan. 11, 2016) ("As to the implications of a term embodying software, the Federal Circuit and this Court have found that software may connate structure."); *Smartflash*, 2015 U.S. Dist. LEXIS 91669, at *13-14 (reviewing cases where application of long-standing claim construction principles resulted in courts finding the terms "circuit"; "circuit" coupled with "interface," "programming," and "logic"; "detector"; and "computer code" to be sufficiently structural to preclude application of § 112, ¶ 6); *Kit Check*, 2019 U.S. Dist. LEXIS

148398, at *28, 33, 34, 38 (finding that "storing information" is a function that a general purpose computer can perform; that "computer-executable instructions" is readily understood by a POSITA; and terms "code" and "instructions" recite structure; and noting that courts have found fairly high-level functions, coupled with "code" to provide sufficient structure)[5].

Target's arguments, premised on its misapplication of the law, should be rejected.

###### b.   Target's Assertions Are Wrong as a Matter of Fact

Based on the flawed characterization of the law, Target erroneously argues that the claim language here does not connote definite structure for performing the recited function.  (D.I. 31 at 10; *see also id.* at 16 ("claim language is divorced from the purported invention").)  In addition to being legally flawed, these arguments are wrong as a matter of fact.

---

[5] Notably, Target's expert Dr. Goldberg has testified previously that similar claim terms recited sufficient structure to avoid the application of § 112, ¶ 6.  Dr. Goldberg's declarations in *Typemock, Ltd. v. Telerik, Inc.*, No. 17-10274-RGS, 2018 U.S. Dist. LEXIS 149110 (D. Mass. Aug. 31, 2018), and *Advanced Ground Info. Sys. v. Life360, Inc.*, No. 14-80651-CV, 2014 U.S. Dist. LEXIS 187770 (S.D. Fla. Nov. 21, 2014), are attached hereto as ***Exhibit 1*** and ***Exhibit 2***, respectively.  (*See* Ex. 1, ¶ 13 ("[T]he patentee may express that procedural algorithm in any understandable terms . . . I understand that the disclosure in the specification need not be exhaustive . . . ."), ¶ 15 (code elements with coupled software components); ¶ 19 (algorithmic structure for computational apparatus); ¶ 25 ("processor" is a well-known term of art and not indefinite; commenting on the claim language "any suitable processor, display and input means may be used"); ¶¶ 26-27 (computational apparatus with enough claimed algorithmic structure); ¶ 29 (a system wherein a plurality of software components comprises a set); ¶ 30 (a POSITA would understand the meaning of code elements for routine access).  *See also* Ex. 2, ¶ 21 (opining a POSITA would know how to use graphic libraries and symbol generator connoted sufficient structure); ¶ 24 (a POSITA would know CPU software is a standard module of code and how to utilize it); ¶ 33 ("A POSITA would have understood that there existed classes of software routines that programmers would have used to electively send data to the cellular phones of other participants whose cellular phones respond."); ¶ 34 (the term "CPU software" is sufficient to identify modules of code); ¶ 35 (high level algorithm example); ¶ 54 (opining on HTTP protocol).)  Relying in part on Dr. Goldberg's testimony, the *Typemock* court adopted constructions in vein with Dyfan's position in this matter.  (*See Typemock*, 2018 U.S. Dist. LEXIS 149110, at *17-18 ("Absent evidence to the contrary, the court credits the opinion of Typemock's expert, Dr. Goldberg, that the claim language sufficiently informs a person of ordinary skill in the art of the algorithm to perform the stated functions."); *id.* at *8 n.3 (agreeing with Goldberg that "because practicing the claimed invention involves writing code that interacts with virtual machines . . . , profilers, and/or debuggers, to change the behavior of an executing program, one of skill would have experience in 'systems-level' programming").)

Each of these disputed terms is part of a system claim that recites, among other things, a building, broadcast short-range communication units, a server, and an application or code executable by mobile devices in communication range of one or more of the broadcast short-range communication units, which give further meaning to the disputed limitations.  (Ex. 3 at 164:17-165:3.) [6]  These additional claim limitations would have informed a POSITA regarding the structure for performing the various alleged functions, *e.g.*, the application or code.  For example, the claims refer to "broadcast short-range communications unit[s]," "messages," "communications protocols" including Bluetooth and Internet protocols, mobile devices, mobile device displays, and one or more servers.

Target's own expert Dr. Goldberg conceded that both "application" and "code" are terms of art and that the claim language provided additional structural limitations to the claim beyond "application" or "code."  (Ex. 3 at 56:9-10 ("[A]n application is something that provides information to a user."); *id.* at 58:4-6 (conceding that "application" is a term of art); *id.* at 46:2-3 (conceding "transfer protocols" to be a term of art); *id.* at 83:8-10 ("message" is a term of art); *id.* at 20:24-25 to 21:1 ("protocol" is a term of art).)

Dr. Goldberg also admitted that a POSITA would have been aware of various commercial off-the-shelf software that could perform many of these functions:

> Q.      Okay. And as with user interfaces, are there off-the-shelf applications that a person skilled in the art would be aware of that they could use depending on their needs in developing some type of network system?
> A.      Certainly.
> . . .
> A.      . . .  I mean, there are numerous apps that you can buy from the app store that cause communication between a mobile device and a server, so the answer is yes, there's lots of off-the-shelf applications you can buy to operate in the context of a network.

---

[6] Excerpts from the Deposition of Dr. Goldberg in this matter from November 12, 2019 are attached hereto as ***Exhibit 3***.

(*Id.* at 56:19-25 to 57:13-19.)

Likewise, Dr. Goldberg admitted that a POSITA would understand that there were a limited number of communications protocols that dictated the software code that would be used to achieve the alleged functions:

> Q.     And that would hold true with pretty much every type of communication protocol for networks, is that fair?
> . . .
> A.     Every standardized communication protocol, yes, one of skill could read the standard and understand that there is code implementing that standard on the devices.

(*Id.* at 45:1-9.)  Target's arguments fail to account for these additional structural limitations present in the claims that bear directly on the disputed limitations.

Perhaps even more egregious, Dr. Goldberg admitted that he did not review the file histories in forming his opinions.  (*Id.* at 209:23-25 ("A. So I don't—I don't believe I reviewed the file histories for the 899 and 292.").)  If he had, he would have seen that the patentee expressly stated §112, ⁋ 6 does not apply to the claim terms.[7]  (*See, e.g.*, D.I. 32-4 at 30 ("Finally, it should be noted that no claims are intended to be construed under 35 U.S.C. 112, paragraph 6."); D.I. 32-5 at 51 (same).  *See also* Ex. 4, amend. B at 8 ("Finally, it should be noted that no claims are intended to be construed under 35 U.S.C. 112, paragraph 6."); *id.*, amend. D at 19 (same); *id.*, amend. E at 17 (same).)

Dr. Goldberg's failure to consider the prosecution histories—part of the intrinsic record—and their import on the application of § 112, ⁋ 6 means his opinions should be given little or no weight.  Indeed, extrinsic evidence cannot be used to contradict the intrinsic record. *Phillips*, 415 F.3d at 1319 ("[U]ndue reliance on extrinsic evidence poses the risk that it will be used to change the meaning of claims in derogation of the ***indisputable*** public records consisting

---

[7] Amendments B (filed Jan. 7, 2016), D (filed Aug. 25, 2016), and E (filed Nov. 22, 2016) to the '197 application are attached hereto as ***Exhibit 4***.

of the claims, the specification and the prosecution history . . . .") (internal quotation marks omitted); *id.* at 1324 (courts are not barred from using extrinsic sources, "***as long as those sources are not used to contradict*** claim meaning that is unambiguous in light of the ***intrinsic evidence***").

For at least these reasons, Target has not rebutted the presumption against § 112, ⁋ 6.

### 2.    Target Has Not Demonstrated that the Disputed Limitations Are Indefinite by Clear and Convincing Evidence Even if Governed by § 112, ⁋ 6

Even assuming § 112, ⁋ 6 applies (it does not), Target's averments that the specifications do not include the requisite disclosure to support the alleged functions (D.I. 31 at 10, 15, 19) are wrong and unsupported by clear and convincing evidence.  Target's expert, Dr. Goldberg, admitted in rendering his opinions that he reviewed no communication protocols, no standards, and no parts of the prosecution history in forming his opinions.  (*See, e.g.*, Ex. 3 at 20:14-23 (admitting lesser familiarity with the Bluetooth protocol and that reviewed Bluetooth documentation "a long time ago"); *id.* at 34:18 to 35:11 (conceding lack of knowledge about modifications to the IEEE 802.11p protocol).)  Dr. Goldberg also admitted that he did not consider the structure provided by the remainder of the claim language when opining on the various limitations (*see id.* at 210:10-12 ("I suspect that would provide some—some structure . . . ."); *id.* at 216:20-22 ("I was not asked to opine on the limitations regarding Bluetooth or internet protocol."); *see generally id*. at 210-224 (discussing structure)), and thus necessarily did not consider the corresponding discussion in the priority applications.

Dr. Goldberg essentially rendered his opinions on an incomplete record and admitted as much during his deposition.  (*Id.* at 209:4-25 (reviewing materials listed in the expert's declaration).)  His failure to consider the other structural aspects, such as various communication protocols that dictate how data is transmitted and formatted for transmission, disclosed in the '584 provisional and patents in suit is egregious, but perhaps unsurprising given his lack of

familiarity with the details of the various protocols. (*E.g.*, Ex. 3 at 20:14-23, 26:5-17, 30:22-31:8, 34:22-35:11, 37:5-25, 38:1-16; 39:23-40:12, 67:14-68:17.)   Either way, his opinions cannot rise to the level of clear and convincing evidence needed to find indefiniteness. *See BASF*, 875 F.3d at 1365 (defendant has the burden of proving indefiniteness by clear and convincing evidence).

Target also mischaracterizes the law once again.  For instance, Target relies on *Aristocrat Techs. Austl. PTY Ltd. v. Int'l Game Tech.*, 521 F.3d 1328 (Fed. Cir. 2008) to argue that a detailed algorithm is required here.  (D.I. 31 at 14.)  That is wrong.  *See Aristocrat*, 521 F.3d at 1338 ("Aristocrat was not required to produce a listing of source code or a highly detailed description of the algorithm . . . ."); *see also SyncPoint*, 2016 U.S. Dist. LEXIS, at *72 (rejecting the defendants' argument that § 112, ¶6 applied to the term "instructions for" because it was premised on requiring an *Aristocrat*-level disclosure in the claims themselves); *TecSec*, 731 F.3d at 1349 (rejecting the defendants' argument that only generic software was disclosed where the specification included three examples).  Here, the patents in suit describe sufficient structure for achieving the alleged functionality and would have been readily understood by a POSITA.

For at least the foregoing reasons, the Court should reject Target's arguments.

## C.     Terms 16 Through 30: "System" Terms ('899 cls. 1, 7, 9, 11, 25; '292 cl. 12)

Each term in this group is a portion of a wherein clause in a system claim (the '899 patent, 30:50-51; 32:58, 34:58-59, 35:12, 36:45, 37:62; the '299 patent, 39:43.)  Target's arguments concerning this group have the same fundamental flaws as its "code" / "application" averments, *i.e.*, Target has failed to rebut the presumption that the "system" terms are not means-plus-function elements.  *See TecSec*, 731 F.3d at 1349 (articulating the standard).

### 1.     The Disputed Claim Limitations Do Not Invoke § 112, ¶ 6, and Target Has Not Rebutted the Presumption Against Its Application

As with the above terms, none of these disputed terms recite "means for" or "step for." Thus, under *Williamson*, each of those terms is presumed to ***not*** be governed by § 112, ¶ 6. *See Williamson*, 792 F.3d at 1348; *see also Aloft Media*, 570 F. Supp. at 894-95 (the use of the term "means" generally invokes § 112, ¶ 6 and "the use of a different formulation generally does not"). To overcome this presumption, Target must show that the claim terms fail to recite sufficiently definite structure or that the claim terms recite function without reciting sufficient structure for performing that function. *Williamson*, 792 F.3d at 1349. Again, Target cannot meet this burden.

Here, the wherein clauses each refer to the structure recited in the corresponding preceding limitations of the claims. Dr. Goldberg failed to account for all that structure as noted above in rendering his opinion *See, e.g.*, *Aloft Media*, 570 F. Supp. 2d at 895-98 (finding that the defendant did not overcome the presumption because the "wherein" clauses implicitly refered to the "computer code" element(s), which in turn disclosed sufficient structure); *King Pharm. Inc. v. Purdue Pharma L.P.*, 718 F. Supp. 2d 703, 712 (W.D. Va. 2010) ("[W]hether a 'wherein' clause is part of the function of a claim is a fact specific question. Accordingly, the court cannot consider the word 'wherein' in isolation . . . .").

In this matter, terms 16 through 30 are part of wherein clauses that recite "wherein the system is configured . . . ." The claimed systems include, among other things, a building, broadcast short-range communication units, a server, and an application or code executable by mobile devices in communication range of one or more of the broadcast short-range communication units. Terms 16 through 30 do not recite any generic placeholders or nonce words in lieu of structure to perform a function. Rather, they further delineate features of the structure of the claimed systems.

Target's arguments to the contrary are premised on Dr. Goldberg's testimony.  (*See, e.g.*, D.I. 31 at 20-21(alleging "add[ing] many functional software-based limitations to the claims" "is the epitome of purely functional claim drafting"); *id.* at 21 (alleging the claim language "does not even limit the corresponding structure to software").)  As noted above, however, Dr. Goldberg's opinions suffer from numerous deficiencies that apply equally to this set of disputed terms.  This includes Dr. Goldberg's lack of knowledge of specific protocols and technology (*see supra* Part II.B.2) and failure to consider the prosecution histories as part of his analysis (*see supra* Part II.B.1).  Here, the intrinsic record expressly contradicts Dr. Goldberg's opinions.  That is enough by itself to reject Target's arguments.  *Cf. Phillips*, 415 F.3d at 1319, 1324 (extrinsic sources cannot contradict intrinsic evidence).

Thus, terms 16 through 30 are not means-plus-function limitations and should be accorded their plain and ordinary meaning.

### 2.    Target Again Has Not Demonstrated that the Disputed Limitations Are Indefinite by Clear and Convincing Evidence Even if Governed by § 112, ¶ 6

For the same reasons as disputed Terms 6-15 (*see supra* Part II.B), Target has failed to demonstrate that Terms 16-30 are indefinite.  For example, the evidence upon which Target relies—Dr. Goldberg's opinions—is flawed.  As noted above, each wherein clause necessarily refers to the structure recited in the corresponding preceding limitation of the claim.  Dr. Goldberg failed to account for that claimed structure as noted above in rendering his opinion (*supra* Part II.B.2), and thus necessarily did not consider it when evaluating the disclosure of the patents in suit.  His opinions therefore cannot constitute clear and convincing evidence, and instead should be given no weight.  Target also premises its arguments on an incorrect reading of the law as discussed above.  (*See supra* Part II.B.1(a).)

For at least these reasons, the Court should reject Target's arguments.

## III.    CONCLUSION

For these reasons, Dyfan respectfully requests that the Court reject Target's proposed

claim constructions and indefiniteness arguments and determine no construction is necessary as

the terms are governed by the plain and ordinary meaning.

Dated:  November 22, 2019

/s/ Timothy Devlin
Timothy Devlin (Bar No. 4241)
Derek Dahlgren (admitted *pro hac vice*)
Devlin Law Firm LLC
1526 Gilpin Avenue
Wilmington, DE  19806
Telephone:  (302) 449-9010
tdevlin@devlinlawfirm.com
ddahlgren@devlinlawfirm.com

*Attorneys for Plaintiff*
*DYFAN LLC*

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on November 22, 2019, I electronically filed the foregoing with the

Clerk of Court using the CM/ECF system which will send notification of such filing to all

counsel of record.

/s/ Timothy Devlin
Timothy Devlin