**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**WACO DIVISION**

DYFAN LLC,

        Plaintiff,

    v.

TARGET CORPORATION,

        Defendant.

C.A. No. 6:19-cv-00179-ADA

**JURY TRIAL DEMANDED**

**PLAINTIFF DYFAN LLC'S**
**<u>REPLY CONSTRUCTION BRIEF</u>**

/s/ *Timothy Devlin*
Timothy Devlin (admitted *pro hac vice*)
Derek Dahlgren (admitted *pro hac vice*)
Devlin Law Firm LLC
1526 Gilpin Avenue
Wilmington, DE  19806
Telephone: (302) 449-9010
tdevlin@devlinlawfirm.com
ddahlgren@devlinlawfirm.com

*Attorneys for Plaintiff*
*DYFAN LLC*

DATED:  December 4, 2019

# TABLE OF CONTENTS

I.   INTRODUCTION ......................................................................................................... 1

II.   DYFAN'S CONSTRUCTIONS OF THE DISPUTED TERMS ARE SUPPORTED BY THE INTRINSIC EVIDENCE AND THE DEPOSITION TESTIMONY OF DEFENDANT'S OWN EXPERT ................................................................................................................. 3

   A.   Terms 6-30 Are Not Governed By 35 U.S.C. § 112, ⁋ 6 ...................................... 3

      1.   Defendant Completely Mischaracterizes the Law and Dyfan's Arguments ................... 4

      2.   Defendant's Argument Against the Prosecution History Statements are Incorrect as a Matter of Law and More Recent Federal Circuit Precedent .................................................. 4

      3.   *Zeroclick* Does Not Support Defendant and Is Directly on Point ................................... 6

   B.   Dyfan's Proposal Regarding the Disputed Non-§ 112, ⁋ 6 Claim Terms is the Supported by the Intrinsic Evidence Unlike Defendant's ......................................................... 11

      1.   Term 1: "building including a plurality of facilities therein" ('292 cls. 1, 15, 28) ........ 12

      2.   Term 2: "shopping mall" ('899 cls. 2, 7, 12, 30; '292 cls. 4, 13, 26, 29) ..................... 12

      3.   Term 3: "identifier including at least three fields" ('899 cl. 1)...................................... 13

      4.   Term 4: "an address portion" ('899 cls. 1, 7, 9, 11, 30; '292, cl. 4) ............................. 14

      5.   Term 5: "output, via the at least one mobile device" / "causing to be output, via the at least one mobile device" / "cause to be output, via the at least one mobile device" ('899 cls. 1, 7, 9, 11; '292 cls. 1, 15, 28) ........................................................................................ 14

III.   CONCLUSION ........................................................................................................... 15

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Aloft Media, LLC v. Adobe Sys.*,
  570 F. Supp. 2d 887 (E.D. Tex. 2008) ................................................................... 10

*Applied Med. Res. Corp. v. U.S. Surgical Corp.*,
  448 F.3d 1324 (Fed. Cir. 2006) ........................................................................... 15

*Ballard Medical Prods. v. Allegiance Healthcare Corp.*,
  268 F.3d 1352 (Fed. Cir. 2001) ............................................................................. 6

*Cox Communs., ,Inc. v. Sprint Commun. Co. L.P.*,
  838 F.3d 1224 (Fed. Cir. 2016) ............................................................................. 3

*Cypress Lake Software, Inc. v. Samsung Elecs. Am., Inc.*,
  382 F. Supp. 3d 586 (E.D. Tex May 10, 2019) ...................................................... 4

*Elkay Mfg. Co. v. Ebco Mfg. Co.*,
  192 F.3d 973 (Fed. Cir. 1999) ............................................................................... 4

*Grecia v. Samsung Elecs. Am., Inc.*,
  780 F. App'x 912 (Fed. Cir. 2019) ........................................................................ 6

*Howmedica Osteonics Corp. v. Wright Med. Tech., Inc.*,
  540 F.3d 1337 (Fed. Cir. 2008) ............................................................................. 5

*King Pharm. Inc. v. Purdue Pharma L.P.*,
  718 F. Supp. 2d 703 (W.D. Va. 2010) ................................................................. 10

*Liebel-Flarsheim Co. v. Medrad, Inc.*,
  358 F.3d 898 (Fed. Cir. 2004) ................................................................... 1, 11, 15

*Linear Technology Corp. v. International Trade Com'n*,
  566 F.3d 1049 (Fed. Cir. 2009) ........................................................................... 13

*Markman v. Westview Instruments, Inc.*,
  52 F3.d 967 (Fed. Cir. 1995) ........................................................................ 1, 2, 5

*Merrill v. Yeomans*,
  94 U.S. 568 (1876) ................................................................................................. 3

*MTD Prods. Inc. v. Iancu*,
  933 F.3d 1336 (Fed. Cir. 2019) ........................................................................ 2, 5

*PC Connector Solutions LLC v. SmartDisk Corp.*
  406 F.3d 1359 (Fed. Cir. 2005) ........................................................................... 11

*Phillips v. AWH Corp.*,
  415 F.3d 1303 (Fed. Cir. 2005) .................................................................. 3, 13, 15

*Phx. Licensing, L.L.C. v. AAA Life Ins. Co.*,
  No. 2:13-CV-1081,
  2015 U.S. Dist. LEXIS 51245 (E.D. Tex. Apr. 18, 2015) ...................................... 14

*Seachange Int'l, Inc. v. C-COR, Inc.*,
   413 F.3d 1361 (Fed. Cir. 2005)..................................................................... 5

*Teva Pharms. USA, Inc.*,
   135 S. Ct. 831 (2015)................................................................................... 3

*Trading Techs. Int'l, Inc. v. Open E Cry, LLC*,
   728 F.3d 1309 (Fed. Cir. 2013)............................................................... 1, 4

*Williamson v. Citrix Online, LLC*,
   972 F.3d 1339 (Fed. Cir. 2015)..................................................................... 3

*Zeroclick, LLC v. Apple Inc.*,
   891 F.3d 1003 (Fed. Cir. 2018)............................................................... 6, 10

**Statutes**

35 U.S.C. § 112............................................................................... passim

## I.    INTRODUCTION

The vast  majority of Defendant's arguments, amounting to handwaving, are mere *ad hominem* arguments insinuating some alleged improper behavior and have no support in law or fact, nor relevance to claim construction.  For example, Defendant criticizes Dyfan for citing to the patents in suit—but these are ***indisputably*** part of the intrinsic record, which is uniformly recognized as the source of the most important evidence for claim construction.  Defendant also appears to be challenging written description or the priority date for the asserted claims.  (D.I. 40 at 15.)  But that is not the purpose of claim construction.  *Trading Techs. Int'l, Inc. v. Open E Cry, LLC*, 728 F.3d 1309, 1318 (Fed. Cir. 2013) ("Despite their similarities, however, claim construction and the written description requirement are separate issues that serve distinct purposes."); *Liebel-Flarsheim Co. v. Medrad, Inc.*, 358 F.3d 898, 902 (Fed. Cir. 2004) ("[A]ny question regarding the support or lack of support for the claims in the original disclosure bears on the issues of priority and validity, not on the issue of claim construction.").  While Defendant may possibly raise these arguments later, at this time they have no bearing on the dispute presently before the Court.

On the merits, Defendant fairs no better.  For the alleged means-plus-function claims, Defendant's legal argument attempting to dispense of the prosecution history statements—part of the official record—made repeatedly that no terms are intended to be governed by § 112, ¶ 6 is based on bad law.  It has no foundation in the Federal Circuit cases cited, and has actually been rejected.  First, going back to the seminal case, *Markman v. Westview Instruments, Inc.*, the Federal Circuit noted that "[t]he subjective intent of the inventor when he used a particular term is of little or no probative weight in determining the scope of a claim (***except as documented in***

1

*the prosecution history)*." 52 F3.d 967, 985 (Fed. Cir. 1995) (*en banc*)[1].  Second, and more recently, in *MTD Prods. Inc. v. Iancu*, 933 F.3d 1336, (Fed. Cir. 2019), the Federal Circuit stated that "[w]hile it would have avoided uncertainty and argument had MTD shared its current view that the claim limitation is written in means-plus-function format during the original prosecution, MTD's statements *did not clearly disclaim such an interpretation*.").

Here, while we have the opposite situation, it is equally as applicable.  The patentee repeatedly and consistently stated that *no* terms were governed by § 112, ⁋ 6, and thus *unequivocally disclaimed* any such interpretation.  *Id.*  This is not mere subjective intent of the inventor, which is normally relevant to later inventor *post hoc* testimony.  Instead, here, we have a classic case of the exception noted in *Markman* that the intent of the applicant *does* carry meaning when *documented in the prosecution history.  Markman*, 52 F.3d at 985.  Ignoring statements such as these would render the doctrine of prosecution disclaimer or lexicography based on the prosecution history both a nullity.  That is indisputably not the law.  And given this unmistakable support in the intrinsic evidence, Defendant's extrinsic evidence is of no moment—it cannot be used to contradict the clear meaning accorded by the intrinsic evidence.

For the disputed terms 1-5, Defendant fairs no better.  Defendant again seeks to change the inquiry from construing the claims to attacking support in the earlier priority applications by alleging the invention originally disclosed is somehow wholly divorced from what is now claimed.  First, Defendant is wrong.  And moreover, as noted above, attempts to turn claim construction into a priority contest have been flatly rejected by the Federal Circuit.  Likewise, Defendant mischaracterizes Dyfan's arguments.  Dyfan relies on the specification, and as seen in the opposition brief, and the specification of the priority applications, to refute Defendant's flawed constructions.  Defendant may have other opportunities to contest written description or

---

[1] Unless otherwise noted, all emphases are added.

priority, but this is not the time nor place.  And there is no fault with Dyfan's application of well-settled law as Defendant insinuates.

## II.   DYFAN'S CONSTRUCTIONS OF THE DISPUTED TERMS ARE SUPPORTED BY THE INTRINSIC EVIDENCE AND THE DEPOSITION TESTIMONY OF DEFENDANT'S OWN EXPERT

As a threshold matter, Defendant again engages in handwaving by arguing that Dyfan cited to "virtually no intrinsic evidence (other than the claims themselves) and no extrinsic evidence to support its arguments, yet then accuses Dyfan of not identifying any supporting evidence, intrinsic or extrinsic.  First, Defendant appears confused. The claims are supporting intrinsic evidence.  Indeed, the language of the claims is ***uniformly recognized*** as being of "primary importance" in claim construction.  *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312 (Fed. Cir. 2005) (quoting *Merrill v. Yeomans*, 94 U.S. 568, 570 (1876)).  Second, with respect to the alleged § 112, ¶ 6 terms, the threshold inquiry is ***looking to the language of the claims themselves*** to determine if they contain sufficient structure.  *Williamson v. Citrix Online, LLC*, 972 F.3d 1339, 1349 (Fed. Cir. 2015).  It is disingenuous to discredit Dyfan for relying on the claim language under these circumstances.

### A.   Terms 6-30 Are Not Governed By 35 U.S.C. § 112, ¶ 6

As a threshold matter, where means is not used in the claims, a challenger must rebut the presumption against § 112, ¶ 6 by a preponderance of the evidence.  If successful, the ultimate conclusion regarding indefiniteness is a legal conclusion, but it may contain factual underpinnings.  *Cox Communs., ,Inc. v. Sprint Commun. Co. L.P.*, 838 F.3d 1224, 1228 (Fed. Cir. 2016).  A challenger must prove any facts required for a holding of indefiniteness by clear and convincing evidence.  *Id.*  Although indefiniteness may be determined based solely on the intrinsic evidence, here Defendant admittedly relies exclusively on ***extrinsic*** evidence, meaning

the question before this Court is not simply one of law. *See Teva Pharms. USA, Inc.*, 135 S. Ct. 831, 840 (2015).

### 1.    Defendant Completely Mischaracterizes the Law and Dyfan's Arguments

Defendant admits that it relies exclusively on extrinsic evidence in the form of Dr. Goldberg's Declaration as support for its assertion that § 112, ¶ 6 governs terms 16-30.  (D.I. 40 at 3-4.)  Defendant refers to a detailed overview of the priority applications, but again as noted above that is irrelevant for purposes of claim construction.  *Trading Techs. Int'l, Inc.*, 728 F.3d at 1318.  Defendant then asserts that Dyfan included no contrary evidence.  Again this is wrong. The threshold inquiry into whether the presumption ***against*** § 112, ¶ 6 has been rebutted ***necessarily*** requires one to look at the language of the claims themselves.  These form part of the intrinsic evidence as well.  *Elkay Mfg. Co. v. Ebco Mfg. Co.*, 192 F.3d 973, 977 (Fed. Cir. 1999) ("Claim construction begins with the words of the claim.").  Thus, Defendant's assertion that Dyfan provided no contrary evidence is demonstrably false.  Indeed, Defendant admits that Dyfan ***has*** argued against § 112, ¶ 6 based on the language of the claims and prosecution history—intrinsic evidence.  (D.I. 40 at 4.)

### 2.    Defendant's Argument Against the Prosecution History Statements are Incorrect as a Matter of Law and More Recent Federal Circuit Precedent

Defendant argues that the prosecution history statements that were cited (intrinsic evidence which contradicts its immediately proceeding sentence that Dyfan submitted no evidence) are irrelevant.  That is wrong and contradicted by Federal Circuit precedent.  In alleged support, Defendant misconstrues a quote from *Cypress Lake*, a district court case, as supposed proof that the Federal Circuit has soundly rejected the argument that one can give weight to an applicant's statement in the prosecution history that no claims are governed by § 112, ¶ 6.  (D.I. 40 at 4) (citing *Cypress Lake Software, Inc. v. Samsung Elecs. Am., Inc.*, 382 F.

4

Supp. 3d 586, 616 (E.D. Tex May 10, 2019).)  Not so.  *Cypress Lake* cites two Federal Circuit cases, neither of which stands for this proposition.

First, *Howmedica Osteonics Corp. v. Wright Med. Tech., Inc.*, 540 F.3d 1337, 1347 (Fed. Cir. 2008) dealt with *post hoc* inventor testimony concerning the alleged scope of the claims. That is a far cry from the situation here where the statement is part of the official record—the prosecution history.  *Markman v. Westview Instruments, Inc.*, 52 F3.d at 985 ("[t]he subjective intent of the inventor when he used a particular term is of little or no probative weight in determining the scope of a claim *(except as documented in the prosecution history)*.").  This *en banc* decision is controlling Federal Circuit law.[2]

Second, *Cyprus Lake* cites to *Seachange Int'l, Inc. v. C-COR, Inc.*, 413 F.3d 1361, 1375 (Fed. Cir. 2005). That case is also inapposite.  There, the applicant had stated it added claim 37 to more fully cover the scope of the invention.  *Id.*  However, it then disclaimed scope by distinguishing a group of claims, including claim 37, based on a common feature.  *Id.* at 1373-74 (nothing in prosecution history suggests that disclaimer did not apply to all claims).  The Federal Circuit found that applicant's earlier statement that one of the claims was added to more fully cover the scope of the invention did not overcome the applicant's later disclaimer.  *Id.*

In this situation, the prosecution history of the patents in suit and that statements relied on by Dyfan are not attempts to rebut a prior or later disclaimer.  So *Seachange* has no bearing here. Instead, they are indisputably part of the public record and themselves served as an express disclaimer of any construction based on § 112, ¶ 6.  *MTD Prods. Inc. v. Iancu*, 933 F.3d 1336, (Fed. Cir. 2019).  Taking the *Cyprus Lake* court's decision to its extreme as interpreted by Defendant, an applicant could never engage in lexicography or disavowal during prosecution because each is always based on the applicant's "intent" to deviate from the ordinary and

---

[2] Unless otherwise noted, all emphases are added.

customary meaning.  *That is clearly not the law*.  Further, the statements in the prosecution histories of the patents in suit are clear and unmistakable.  While the applicant's statements were intended to inform the examiner of the proper interpretation for assessing patentability, even assuming *arguendo* that the repeated and consistent statements made throughout prosecution were not part of arguing for patentability (they were), they are still entitled to weight.  *Ballard Medical Prods. v. Allegiance Healthcare Corp.*, 268 F.3d 1352, 1359 (Fed. Cir. 2001) (applicant may use the prosecution history to define what invention is and is not and including as an example by distinguishing invention over prior art).

Finally, while Defendant appears to be implicitly attacking written description and priority, if Defendant wishes to contest these issues, it may do so subject to the rules and orders governing this case.  But for purposes of claim construction, the matter is settled:  the claims do not fall under § 112, ¶ 6 as the repeated and consistent statements that no claim falls under § 112, ¶ 6 are "documented in the prosecution" in clear and unmistakable language.  *Markman v. Westview Instruments, Inc.*, 52 F3.d at 985.

### 3.    *Zeroclick* Does Not Support Defendant and Is Directly on Point

Defendant's arguments concerning *Zeroclick, LLC v. Apple Inc.*, 891 F.3d 1003 (Fed. Cir. 2018) misunderstand and misinterpret the decision.  Defendant attempts to distinguish the case on two points.  Curiously it first argues that the Federal Circuit's decision was based on Apple's failure to present *any evidentiary* support.  (D.I. 40 at 5.).  Yet Defendant then admits that in *Zeroclick*, the Federal Circuit held that a POSITA would have understood *from the claims* that the terms "program" and "user interface code" were used as specific references to conventional graphical user interface programs or code existing in the prior art at the time of the inventions.  (D.I. 40 at 6-7); *see also Grecia v. Samsung Elecs. Am., Inc.*, 780 F. App'x 912, 916

(Fed. Cir. 2019) (*Zeroclick* held a POSITA would recognize program and user interface code as specific references to conventional programs or code).

Nonetheless, based on the foregoing, Defendant asserts that *Zeroclick*, is in "sharp contrast" to the disputed terms because it "referenced existing, specific and known structures for performing certain functions." (D.I 40 at 7).   This is wrong for multiple reasons.

First, the Federal Circuit rejected the application of § 112, ⁋ 6 by first stating that the mere inclusion of functional language does not automatically invoke § 112, ⁋ 6. *Id.* at 1008.  It then noted that the district court had removed the terms from their context. *Id.*  One example it discussed was "user interface code," *i.e.*, code meant to be updated using two configurations recited in the claim, was stored in a memory connected to a processor, which in turn was configured to receive from the screen information regarding locations touched by a user. *Id.*  Based on this claim language, the Federal Circuit held that a POSITA would have understood user interface code to be a specific reference to conventional programs or code rather than a nonce term invoking § 112, ⁋ 6.

Defendant makes the same mistake that the Federal Circuit corrected in *Zeroclick*. Contrary to its assertion, the terms at issue here are remarkably similar to the foregoing example in *Zeroclick*.  Term 6 (in claims 1, 7, 9, and 11 of the '899 patent), to paraphrase, is an application or computer code configured to be executed by at least one mobile device and when executed configured to cause the display of an option via a display of the at least one mobile device.  (D.I. 32-3 at 2.)  Here, the claim recites the application or code being capable of performing the simple function of displaying an option.[3]  Defendants' expert Dr. Goldberg

---

[3] Defendant's expert Dr. Goldberg has testified previously that similar claim terms recited sufficient structure to avoid the application of § 112, ⁋ 6. (*See* D.I. 41-1, ¶ 25 ("processor" is a well-known term of art and not indefinite; commenting on the claim language "any suitable processor, display and input means may be used"); ¶¶ 26-27 (computational apparatus with enough claimed algorithmic structure). ⁋

conceded that the noun "display" refers to a hardware component that allows data to be displayed to a user and that there were known off the shelf programs to use with drives. (Ex. 1 at 59:23-61:3.) He also admitted that both "application" and "code" are terms of art and that the claim language provided additional structural limitations. (D.I. 41-3 at 56:9-10 ("[A]n application is something that provides information to a user."); *id.* at 58:4-6 (conceding that "application" is a term of art).) This is on all fours with the example in *Zeroclick*.

Term 7 is too. It refers to code configured to be executed by at least one of the mobile devices, the code, when executed, configured to cause display, via a display of the at least one mobile device, of an option for causing first visual information and second visual information to be output via the at least one mobile device. Again, Defendant's expert conceded a display was known structure that had known software components that allowed it to display information. (Ex. 1 at 59:23-61:3.) Here, the claim term simply specifies what information may be displayed. That matters not for the § 112, ¶ 6 inquiry; the function is still display and it is adequately supported by structure recited in the claim, just as the example in *Zeroclick*.

Terms 8-30 are all similar (even assuming the wherein clauses for terms 16-30 are not enough in themselves to preclude § 112. ¶ 6—Dyfan maintains they are based on the language of § 112). Terms 8 and 9 include code configured to perform functions such as having a mobile device receive particular information. (D.I. 32-3 at 3-10.) Terms 10-15, to paraphrase,[4] likewise specify that an application (a known term of art that provides information to a user) or code that when executed by a mobile device, outputs via a mobile device particular information in response to information the mobile device with the application or code receives. Term 20 refers

---

[4] None of the paraphrasing of the disputed claim terms is meant to be a proposed construction or any admission related thereto. It is simply being used to aid the Court in assessing Defendant's argument as the functions are largely information agnostic, with the claim language providing specific algorithmic support for the type of information and sequence of any actions for which the system is configured where applicable..

to an application that when executed is configured to permit a determination whether a mobile device application including output of visual information is triggered.  It was previously grouped with the system claims in Dyfan's earlier briefs.  But that makes no difference.  Dr. Goldberg agreed this was the *same* application referred to in claim 11 of the '899 patent.  (Ex. 1 at 182:17-184:13.)  For claim 11 he conceded that there were numerous instances of structure that would inform a POSITA's understanding of application, also an admitted term of art.  (Ex. 1 at 98: 4-99:22; *see also* 135:22-140:7.)

Terms 16-19 and 21-30 (the "systems terms") are likewise the same.  Each of these terms is found in a wherein clause in which the system is further configured to achieve other aspects of the inventions.  To paraphrase, again for efficiency's sake, these include to receive and output various information (terms 16-17), to have a user input to affect whether one or more mobile device applications are triggered (terms 18-20), to output various information as a user moves (term 21), to have the output of the mobile device be conditionally based on whether a threshold is met (term 22), to have information output after receipt of a user input and one or more broadcasted messages (term 23), to output automatically after receipt of a message without requiring additional communication with a communications unit (terms 24-25), to have mobile device application actions be based on user feedback information received from the user of the mobile device (terms 26-27), to output information without additional user input after an earlier input (term 29), and to have information located based on a value (term 30)

In sum, none of these terms lacks structure compared to the example in *Zeroclick* (code meant to be updated using two configurations, recited in the claim, was stored in a memory connected to a processor, which in turn was configured to receive from the screen information regarding locations touched by a user).  *Id*. at 1008.  Here, the disputed terms recite numerous structures including mobile devices (which a POSITA would understand include at least one

9

processor) having displays that contain specific known software drivers, communications protocols dictating message formatting and software residing on the mobile devices, short range communications units and more. This is ***more*** than what was present in *Zeroclick*.   Further, it is indisputable that Dr. Goldberg ***never*** addressed all the various structural elements in the claims and how they may or may not achieve the various alleged functions identified by Defendant for terms 6-30.  (Ex. 1 at 164:17-165:3; 210:10-12.)  This is a classic case, as noted in *Zeroclick*, where his analysis "removed the terms from their context."  891 F.3d at 1008.  This flawed analysis is insufficient to rebut the presumption against § 112, ⁋ 6.

Moreover, for the system terms 16-19 and 21-30, *Zeroclick* provides further support.  The Federal Circuit dealt with the phrase "program that can operate the movement of a pointer." *Zeroclick*, 891 F.3d at 1008.  In its analysis it faulted the district court for ignoring its context in the claim, which there ignored the preamble that referred to a graphical user interface which may comprise an update of an existing program using a two-step method.  *Id.*  Here, each of the system terms is found in a wherein clause and refers to the system in the preamble of the various claims that recites the all the structural aspects noted above present in the respective claims. *Aloft Media, LLC v. Adobe Sys.,* 570 F. Supp. 2d 887, 895-98 (E.D. Tex. 2008) (finding that the defendant did not overcome the presumption because the "wherein" clauses implicitly referred to the "computer code" element(s), which in turn disclosed sufficient structure); *King Pharm. Inc. v. Purdue Pharma L.P.*, 718 F. Supp. 2d 703, 712 (W.D. Va. 2010) ("[W]hether a 'wherein' clause is part of the function of a claim is a fact specific question.  Accordingly, the court cannot consider the word 'wherein' in isolation . . . .").  And because Dr. Goldberg ***never*** addressed all the various structural elements in the claims and how they may or may not achieve the various alleged functions identified by Defendant for these terms, (Ex. 1 at 164:17-165:3; 210:10-12), his analysis "removed the terms from their context" and is legally erroneous.  *Zeroclick*, 891 F.3d at

1008.  This flawed analysis again is insufficient to rebut the presumption against § 112, ¶ 6 for this additional reason.

Target also curiously argues that the statements in the '197 application that various embodiments of the invention have broad scope not limited to any particular element (e.g., any device, any type of information capable of being communicated, implementing interfaces disclosed in patents in suit in any desired manner) support its positions.  (D.I. at 7.)  This is just hand-waving.  These *examples*, while noting the potential broad application of the claimed inventions, do not rewrite the structure recited in the disputed terms, which Defendant's own expert concedes contain numerous examples of specific known structure.  (*E.g.*, Ex 1 at 84:14-85:24; 98:1:13.)

### B.     Dyfan's Proposal Regarding the Disputed Non-§ 112, ¶ 6 Claim Terms is Supported by the Intrinsic Evidence Unlike Defendant's

Defendant's leading argument is again a written description or priority challenge.  (D.I. 40 at 15.)  That is not the purpose of claim construction.  *Liebel-Flarsheim Co*, 358 F.3d at 902 ("[A]ny question regarding the support or lack of support for the claims in the original disclosure bears on the issues of priority and validity, not on the issue of claim construction.").

The cases relied upon by Defendant are also inapposite.  In *PC Connector Solutions LLC v. SmartDisk Corp.*, the Federal Circuit simply noted that certain terms like "traditionally" and "conventional" were time dependent and could not have a changing meaning over time in the context of the patent—they had to be given the ordinary meaning at the time of invention.  *PC Connector Solutions LLC v. SmartDisk Corp.* 406 F.3d 1359,1363 (Fed. Cir. 2005).  *Phillips* appears to have no relevant discussion at pin cite 1312 but later notes the uncontroversial point that claims are construed as of the time of invention.  None of these cases supports Defendant's argument, which as best can be ascertained, is that the original applications do not support the new claims and thus its arguments must be accepted.  (D.I. 40 at 15.)  Again, whether that is the

situation (Dyfan asserts it is not), it is wholly separate from the inquiry today.  *Liebel-Flarsheim Co*, 358 F.3d at 902.  Defendant's arguments to this effect are irrelevant.

> **1.      Term 1: "building including a plurality of facilities therein" ('292 cls. 1, 15, 28)**

Defendant seeks to rewrite the claim simply for litigation purposes, likely grasping at some purported non-infringement theory. This is improper and at odds with the claims.  Claim 4 of the '292 patent recites two alternatives wherein "the plurality of facilities include one or more spaces" or wherein "the plurality of facilities include one or more departments." ('299 patent, 34:14 & 34:15.)  Defendant's proposed construction would improperly limit claim 1 to exclude the "one or more departments" alternative.  This would also apply to claims 26, 29, and 30.  Defendant also again focuses exclusively on the priority applications attempting to turn this into a priority or written description battle.  That is not the purpose of claim construction—those arguments are irrelevant.  Further, nothing in the priority applications rises to lexicography.

> **2.      Term 2: "shopping mall" ('899 cls. 2, 7, 12, 30; '292 cls. 4, 13, 26, 29)**

Defendant argues that term 2 (*i.e.*, "shopping mall") should be given its plain and ordinary meaning but improperly limits the term a building containing two or more distinct and independent retail stores.  It also now for the first time attempts to redefine the terms to be construed.  The latter should not be allowed.  Defendant never sought to confer with Dyfan on this change.  This is the first instance Dyfan has seen it.  But either way Defendant is wrong.

Defendant's proposed construction, even as modified, would only cause confusion.  Dependent claim 30 of the '899 patent and dependent claim 4 of the '292 patent make this point clear.  Both recite an alternative in which "the building includes a retail space in a shopping mall."  Using Defendant's proposed construction results in a redundant and confusing clause.

Defendant's construction also fails to account for the ordinary meaning of shopping mall, which includes outdoor shopping malls comprising multiple buildings.  This is consistent with

the claims--system claims comprising a building.  That is , there can be more than one.  Nor is there any other basis for redefining "shopping mall" to limit its ordinary scope, which would be well understood by a person of skill in the art and the jury.

### 3.    Term 3: "identifier including at least three fields" ('899 cl. 1)

Defendant's initial assertion that Dyfan "acknowledges" Defendant's construction flows from the disclosure is wrong.  This is intertwined with Defendant arguing that Dyfan offered no evidence contradicting Defendant's construction.  Both misunderstand Dyfan's arguments. Dyfan pointed to the instrinsic record and noted Defendant was trying to *limit* its construction to *specific examples* in the specification.  Doing so, as Defendant attempts, is wrong.  *Phillips*, 415 F.3d at 1312.

Setting that aside, Defendant's construction is wrong because it ignores the claim language.  The claims contain no reference to subdivision or data locations, and thus do not support Defendant. Defendant's reliance on the '584 provisional and ' 197 application also do not provide support.  Defendant admits that the priority applications refer to identifiers in the context of a location identifier and a service identifier.  (D.I. 31 at 28.)  Defendant then focuses on figs. 7 and 8 of the '584 provisional but ignores how these figures are discussed therein.  The '584 provisional makes clear that the formats shown in figs. 7 and 8 are *examples*.  There is no lexicography or disavowal to support Defendant.  *See Linear Technology Corp. v. International Trade Com'n*, 566 F.3d 1049, 1057-58 (Fed. Cir. 2009).

Defendant further seeks to add "subdivided" and "data location" to the claims despite there being no support in the intrinsic record.  The term "subdivided" is not referred to in the priority applications or patents in suit.  Likewise, "data location" is not referred to either in the patents in suit, or the '584 provisional or '197 application.  Defendant's construction also would inject ambiguity into the claim.  Defining field as subdivided data locations is unnecessary and

13

would only add confusion given the many references to location in the asserted claims and what constitutes "subdivided." *Cf. Phx. Licensing, L.L.C. v. AAA Life Ins. Co.,* No. 2:13-CV-1081, 2015 U.S. Dist. LEXIS 51245, at *96 (E.D. Tex. Apr. 18, 2015).

### 4. Term 4: "an address portion" ('899 cls. 1, 7, 9, 11, 30; '292, cl. 4)

Defendant again mischaracterizes Dyfan's arguments. In its opening brief, Dyfan noted that Defendant sought to limit the claims to certain examples but did not point to lexicography or disclaimer. For example, fig. 7 of the patents in suit illustrates "a message structure 700, in accordance with **another embodiment**." (*See* the '899 patent, 11:56-57.)

Defendant also seeks to add a new word "identifying" into the claim, which would exclude many examples such as broadcasting. Here, the specification references multiple disclosed examples of sending messages without specifically "identifying" the destination of the message. In discussing figs. 6 and 12, the provisional notes that the Network I/O Unit may "**_broadcast[] the information to all_** local mobile terminals in communication range." (D.I. 31-2 at 16, ¶ 8.) Because the message may be broadcast, adding "identifying", in the context of "**identifying** the destination of the message," would exclude the "broadcast" embodiment, which is improper. It also suggests a single destination, which again is contradicted by the broadcast embodiments. In addition, **the claims _themselves_** require "broadcasting". (*See, e.g.*, the '899 patent, 29:20-27.) Thus, not only would Target's proposed construction improperly exclude disclosed embodiments, it would also contradict the claim language.

### 5. Term 5: "output, via the at least one mobile device" / "causing to be output, via the at least one mobile device" / "cause to be output, via the at least one mobile device" ('899 cls. 1, 7, 9, 11; '292 cls. 1, 15, 28)

Here, Defendant seeks to redefine output as "delivery." The claims do not support such a construction, nor is there any lexicography or disavowal that supports such a construction.

Instead, claim differentiation weighs heavily against Defendant's construction.  Claim 30 of the '899 patent recites, in part:

> [The system of claim 11, wherein at least one of] … the option includes a selectable option for information ***delivery*** being conditioned; the option includes a selectable option for information ***delivery*** being conditioned on a service attribute; the option includes a selectable option related to at least one aspect of information ***delivery*** . . . .

(The '899 patent, 41:3-8.)  *See Liebel-Flarsheim*, 358 F.3d at 910 ("[W]here the limitation that is sought to be 'read into' an independent claim already appears in a dependent claim, the doctrine of claim differentiation is at its strongest.") .  Of note, claim 30 ***also separately*** refers to "output."  (The '899 patent, 41:14-24.)  Federal Circuit precedent dictates that different claim terms present in the same claim are presumed to have different meanings.  *Applied Med. Res. Corp. v. U.S. Surgical Corp.*, 448 F.3d 1324, 1333 n.3 (Fed. Cir. 2006).  The specification provides further supports.  It teaches that "any of the message ***delivery*** and/or ***display*** . . . disclosed herein may be carried out utilizing one or more components of [a] . . . mobile device (*e.g.* smartphone, tablet, etc.)."  Thus, "delivery" is disclosed as an alternative of "display," both of which are examples of an "output."  This further contradicts Defendant's construction.

## III.  CONCLUSION

For these reasons, Dyfan respectfully requests that the Court reject Defendant's proposed claim constructions and indefiniteness arguments and determine no construction is necessary as the terms are governed by their plain and ordinary meaning.

Dated:  December 4, 2019

/s/ *Timothy Devlin*
Timothy Devlin (admitted *pro hac vice*)
Derek Dahlgren (admitted *pro hac vice*)
Devlin Law Firm LLC
1526 Gilpin Avenue
Wilmington, DE  19806
Telephone:  (302) 449-9010
tdevlin@devlinlawfirm.com
ddahlgren@devlinlawfirm.com

*Attorneys for Plaintiff*
*DYFAN LLC*

## **CERTIFICATE OF SERVICE**

I hereby certify that on December 4, 2019, I electronically filed the foregoing with the

Clerk of Court using the CM/ECF system which will send notification of such filing to all

counsel of record.

*/s/ Timothy Devlin*
Timothy Devlin